## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-81091-CIV-RYSKAMP

ARMOR SCREEN CORPORATION,
a Florida corporation,

      Plaintiff,

v.

STORM CATCHER, INC., a Florida
Corporation, STORM SMART
BUILDING SYSTEMS, INC., a
Florida corporation, SMART TRACKS,
INC., a Florida corporation, BRIAN
RIST, an individual, STEPHEN
JOHNSON, an individual, and
DOEs 1-5, inclusive,

      Defendants.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon the Report and Recommendation of

Magistrate Judge Ann E. Vitunac **[DE 224]** entered on March 10, 2009. Pending before Judge

Vitunac was defendants' motion for claim construction **[DE 30]** filed on April 3, 2008 and the

parties joint claim construction statement **[DE 161]** filed on November 20, 2008. Judge Vitunac

held a preliminary hearing **[DE 53]** on April 30, 2008. Judge Vitunac held the claim

construction hearing **[DE 186]** on January 15, 2009. Both defendants **[DE 247]** and plaintiff **[DE

248]** objected to the report on March 24, 2009.

As a preliminary matter, the parties did not object to a number of Judge Vitunac's claim

constructions. As such, those are adopted by this Court in their entirety. Defendants seek a *de

novo* review of the Report and Recommendation. This Court has conducted a *de novo* review of

each objection and has determined that Judge Vitunac fairly balanced the sources of intrinsic evidence giving each source its due weight.  As such, her construction shall be affirmed in its entirety for the following reasons.

*Defendants' Objections Concerning Placement of the Device Inside a Structure and for the Purpose of Protecting a Life.*

Defendants first objected to a number of Judge Vitunac's constructions arguing that the construction should limit the area in which the device can be erected to the interior of a building and that the device can only be employed to protect a life, as opposed to property.  This Court agrees with Judge Vitunac's construction defining the terms to permit the erection of the device on the exterior or interior of a building to protect anything contained inside the building.

The claim term states that the device is meant to protect "a portion of the interior of a structure."  Judge Vitunac relied on the patent itself (figures, specification and abstract) as well as the prosecution history of the '852 patent to support her conclusion.  Defendants argue that Judge Vitunac relied on the specification too heavily when reaching her decision.  Defendants instead urge this Court to rely on the prosecution history of the claim.

*Phillips v. AWH Corp.*, cited by defendants, holds that courts should first look to the claim words themselves and give those words their ordinary and plain meaning in light of the context in which the words are used.  415 F.3d 1303 (Fed. Cir. 2005).  Next courts are directed to view the specification[1] which *Phillips*, counseled would often be dispositive and is "the single best guide to the meaning of a disputed term."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315

---

[1] Curiously, when citing *Phillips*, defendants insert language into a quote arguing that courts should not consider the specification when construing the claims.  *See*, **[DE 247]** at 4.  That argument is clearly contrary to *Phillips*.

(Fed. Cir. 2005) *citing*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Next a court may review the prosecution history file but since this evidence represents ongoing negotiation between the PTO and the applicant, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  Finally, courts may consider extrinsic evidence, which is irrelevant here.  *Phillips*, at 1312-18, 1323, 1327.  Of the three sources of evidence available for this Court to consider, use of the prosecution history is the least favored and least persuasive.

This Court agrees with Judge Vitunac's analysis of the September 5, 2003 amendment in light of the entire prosecution history.  The amendment focuses on discussing how the edges of the material would be attached to the building.  As such, the language regarding the placement of the device is not clear and unambiguous. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1373 (Fed. Cir. 2005).  This Court does not consider the September 5, 2003 amendment to be a waiver restricting the placement of the device to the interior of a building.

Moreover, simply because an object is designed to protect the interior of a structure does not mean that it can only be erected in the interior of the structure.  Clearly, mounting this device on the exterior of a structure could protect the interior of the structure.  Nothing in the term nor intrinsic evidence supports defendants' proposed construction.  As such the objection is rejected.

As to defendants' objection that the device is intended to protect lives only, this Court holds that defendants waived their objection to this issue.  Although defendants object to the language here, defendant failed to object to Judge Vitunac's construction of "storm survival kit" where is issue is initially addressed.

Even if defendants did not waive their objection, this Court agrees with Judge Vitunac.

The context of the phrase in claim 10 and the specification itself do not limit the purpose of the device to protect lives, but rather to protect lives and property.  As such, this objection is rejected.

*Defendants' Objections Regarding the Spacial Distance of the Device to the Structure*

Defendants also object that Judge Vitunac did not completely construct the term "said edges having means for securing said textile material to said structure" arguing that the construction fails to explain the necessary space between the structure and the device.  This Court rejects this objection for two reasons.  First, this claim term addresses the actual connection between the fasteners on the device and the fasteners on the structure.  Location and orientation are not discussed in these terms and should not be defined here.  Second, defendants' proposed construction language had nothing to do with the spacing and orientation of the device as explained in the objection.  Defendants propose that this Court change Judge Vitunac's construction to the following: "a fastener or fasteners configured for installation or mounting on an interior surface of a structure that cooperate with fasteners secured to or formed integral with edges of the textile material for the purpose of securing or connecting the textile material to the structure in a manner that defines an enclosure or shelter thereunder."  (emphasis added).  Instead of discussing the spacing requirements, this language seems to address another of defendants' unsuccessful arguments: namely, that the patent requires that the device entirely enclose a structure.  The intrinsic evidence does not support this language and defendants' objection is therefore denied.

*Defendants' Objection Regarding Incomplete Construction*

In regards to patent '852, defendants argue that Judge Vitunac failed to properly construct

"a protective barrier device formed of a flexible mesh material."  In their objections, defendants reproduce claim 1 and insert brackets after certain portions of text indicating whether those statements are plural or singular.  One such example states "**a** *protective barrier device* **[singular]**."  Presumably, defendants intended to indicate that the word "a" makes this clause singular.  Likewise, Judge Vitunac's construction states "a protective barrier device in the form of one or more panels of a flexible textile material that acts as a barrier against wind and windborne objects."  This Court does not agree that this term needs different or further construction.

### *Defendants' Objections Concerning Judge Vitunac's Alleged Failure to Construct Claims*

Defendants also argue that Judge Vitunac improperly failed to construct two claims regarding patent '852, namely, "said protective barrier provides reduction of wind force sufficient to maintain the integrity of said structure" and "said protective barrier device is resistant to ultra violet, biological, and chemical degradation."  In both instances, the plaintiff argued that no further construction was necessary as the ordinary meaning is readily apparent.  In both instances, defendant argued that the claim should be construed further.  After considering the parties' arguments and the claim itself, Judge Vitunac concluded that plaintiff was correct and that the terms should be given their plan and ordinary meaning.  This Court agrees.  The fact that Judge Vitunac agreed with plaintiff does not mean that she failed to construe the claim.  Rather, she made a legal determination that the terms should be given their plan and ordinary meaning.  It may be a different case where the parties argue for two different constructions of a claim and a court declines to construct the claim.  Since that is not the case here, this Court declines to comment further.

*Plaintiff's Objection*

Plaintiff objects to Judge Vitunac's construction of claim 1 element 5 of the '852 patent. Plaintiff argues that Judge Vitunac improperly construed "positioning said protective barrier device in a juxtaposed relation to said frangible portions of said structure" to mean "the protective barrier device is positioned in front of the frangible portions, and is spaced apart from the frangible portions of the structure at a minimum calculable distance." Plaintiff notes that the parties agreed that the claim requires the device be placed in front of the structure. Plaintiff, however argues that no further construction concerning the distance/spacing of the device from the structure is necessary. Specifically plaintiff argues that there is nothing in the text of the claim to support such a construction. This Court disagrees.

This Court holds that the spacing language in the construction further defines the word "juxtaposed." In common parlance, juxtaposed means side by side. "[A] patentee may define his own terms, give a claim term a different meaning that the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, at 1316 (explaining why reliance on the patent specification is critical); *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203-04 (Fed. Cir. 2002)(explaining that courts must look to intrinsic evidence to determine whether the the presumption of ordinary and customary meaning is rebutted). Here, the parties have agreed that juxtaposed means, front to back. Since the parties have used the term in an uncommon way, Judge Vitunac was correct to further define the term. As illustrated in the patent's specification and as evident in other sources of intrinsic evidence, the position of the device in front of the structure is an incomplete definition. Rather, the position of the device in front of the structure at a calculated distance is what the claim actually means by juxtaposed. As such, there is a textual

hook to the spacing language and plaintiff's objection is rejected.

To the extent that plaintiff urges this Court to rely on the prosecution history of the patent to reject the spacing language of the construction, this Court relies on its prior analysis regarding use of prosecution history. Specifically, while it can be used, it should be used with caution since it represents negotiations between the patentee and the patent office and since it often lacks the clarity of the specification. *Phillips*, at 1317. Thus, this Court declines to use the prosecution history as the sole basis with which to reject Judge Vitunac's construction.

This Court has read and independently considered all of the above submissions in light of the record. Accordingly, it is hereby,

ORDERED AND ADJUDGED that:

(1) The Report of Magistrate Judge Vitunac **[DE 224]** be, and the same hereby is, RATIFIED, AFFIRMED and APPROVED in its entirety;

(2) Defendants' motion for claim construction **[DE 30]** is partially granted in the following respects:

(3) The following terms in claim 10 of patent 6,325,085 shall be construed as follows:

    (A) "Storm survival kit" means "a protective barrier device configured to be quickly deployed on or within a portion of a structure for protecting an interior portion of the structure from the force of the wind and objects carried thereby."

    (B) "Protecting a portion of the interior of a structure from the force of the wind and objects carried thereby." means "a protective barrier device configured to be quickly deployed on or within a portion of a structure for protecting an interior portion of the structure from the force of the wind and objects carried thereby."

    (C) "A textile material" means "a woven, knitted, nonwoven or extruded material."

    (D) "Having a fail strength of between 61.3 and 675 pounds per square inch" means "the maximum stress at which the textile material bursts, being between 61.3 and 675 pounds per square inch."

    (E) "Interstices in the range of 0.6 to 4.8 millimeter" means "having spacing

between the warp or weft that are between about 0.6 millimeters and 4.8 millimeters."

(F)    "<u>At least two opposing edges</u>" does not require further construction as the ordinary meaning is readily apparent.

(G)    "<u>Said edges having means for securing said textile material to said structure</u>" means "a fastener or fasteners configured for installation or mounting on an interior or exterior surface of a structure that cooperate with fasteners secured to or formed integral with edges of the textile material for the purpose of securing or connecting the textile material to the structure."

(4)    The following terms in independent claim 1 of patent 6,865,852 shall be construed as follows:

(A)    "<u>A process for maintaining the integrity of a structure containing frangible portions subject to impact from windborne objects</u>" does not require further construction as the ordinary meaning is readily apparent.

(B)    "<u>A protective barrier device formed of a flexible mesh material</u>" means "a protective barrier device in the form of one or more panels of a flexible textile material that acts as a barrier against wind and windborne objects."

(C)    "<u>A burst strength greater than 61.3 psi</u>" means "the maximum stress at which the textile material bursts when impacted by a blunt wind-borne object is greater than 61.3 pounds per square inch."

(D)    "<u>An interstice size constructed and arranged to prevent passage of wind-borne objects greater than about 3/16 inch in diameter</u>" means "having spacing between the warp or weft that prevent the passage of wind-borne objects with a diameter greater than approximately 3/16 inch."

(E)    "<u>Positioning said protective barrier device in a juxtaposed relation to said frangible portions of said structure</u>" means "the protective barrier device is positioned in front of the frangible portions, and is spaced apart from the frangible portions of the structure at a minimum calculable distance."

(F)    "<u>Securing said protective barrier to said structure</u>" means "connecting at least one edge of the protective barrier device to the structure."

(G)    "<u>Said protective barrier provides reduction of wind force sufficient to maintain the integrity of said structure</u>" does not require further construction as the ordinary meaning is readily apparent.

(H)    "<u>Said protective barrier device is resistant to ultra violet, biological, and chemical degradation</u>" does not require further construction as the ordinary

meaning is readily apparent.

(5)     The following terms in dependent claim 2 of patent 6,325,085 shall be construed as follows:

    (A)     "At least one panel" does not require further construction as the ordinary meaning is readily apparent.

    (B)     "Peripheral hem" means "at least one panel includes a hem along its perimeter."

    (C)     "Adapted to secure said panel to said structure" means "one or more edges of the panel includes a hem along its perimeter that incorporates a fastening structure for connecting the panel to the structure."

(6)     The following term in dependent claim 3 of patent 6,325,085 "the process of claim 1 wherein said protective barrier device is a textile formed from synthetic threads" does not require further construction as the ordinary meaning is readily apparent.

(7)     The following terms in dependent claim 4 of patent 6,325,085 "the process of claim 2 wherein said synthetic threads are polypropylene" does not require further construction as the ordinary meaning is readily apparent.

(8)     The following terms in dependent claim 6 of patent 6,325,085 "the process of claim 2 wherein said panel is transparent" does not require further construction as the ordinary meaning is readily apparent.

(9)     The following term in dependent claim 8 of patent 6,325,085 "a plurality of releasable fasteners for attachment of said protective barrier to said structure" does not require further construction as the ordinary meaning is readily apparent.

(10)    The following terms in dependent claim 9 of patent 6,325,085 "a plurality of said panels" and "each said panel having parallel edges being releasably connected to said structure by a plurality of cooperating releasable fasteners spaced therealong" do not require further construction as the ordinary meaning is readily apparent.

    DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 31 day of

March, 2009.

                /s/ Kenneth L. Ryskamp
                KENNETH L. RYSKAMP
                UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record
Magistrate Judge Ann E. Vitunac