UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-81091-CIV-RYSKAMP/VITUNAC

ARMOR SCREEN CORPORATION,

        Plaintiff,
vs.

STORM CATCHER, INC., et al.

        Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFF ARMOR SCREEN'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Storm Catcher, Inc., Storm Smart Industries, Inc., Storm Smart Building Systems, Inc., Storm Smart Sales, Inc., Smart Tracks, Inc., and Brian Rist (collectively, "Defendants") by and through the undersigned counsel hereby reply to Plaintiff Armor Screen's Opposition to Defendants' Motion for Summary Judgment and Memorandum of Law as follows.

**I.     INTRODUCTION AND BACKGROUND.**

On February 27, 2009, Defendants moved this Court for summary judgment as to invalidity of the asserted claims, non-infringement as to claim 10 of the '085 patent,[1] that Defendants have not violated the FDUPTA, and that Defendants have not tortiously interfered with Plaintiff's business relationship(s).  [DE 204 and 214].  Subsequently, Plaintiff opposed Defendants' motion for summary judgment [DE 242], to which Defendants reply herein.

**II.    THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 102.**

Plaintiff fought vigorously for a broad construction of the asserted claims and the Court, on April 2, 2009 granted the same.  Now Plaintiff must face the numerous prior art references against the broadly construed claims.  Particularly, the asserted claims are invalid as being anticipated under 35 U.S.C. § 102 in view of either Corliss, Sporta, Serge, Gitlin or Parsons in that, when considered alone, each of these prior art references discloses all of the limitations

---

[1] On March 24, 2009, Defendants objected to Magistrate Judge Vitunac's Report and Recommendation [DE #224] regarding claim construction in that, *inter alia*, the Magistrate Judge erroneously construed the terms "protecting a portion of the interior of a structure from the force of wind and objects carried thereby" and "said edges having means for securing said textile material to said structure."  [DE #247].  In light of this Court's April 2, 2009 Order [DE #267], non-infringement of claim 10 of the '085 patent is not ripe for summary judgment.

1

recited in the asserted claims. In a feeble attempt to refute this, Plaintiff focuses almost entirely on the interstice size,[2] and states that Defendants fail to demonstrate that the prior art discloses and anticipates the same. To the contrary, however, each of these references either expressly or inherently discloses said recited interstice size. See Astra Aktiebolag v. Andrx Pharms, Inc., 483 F.3d 1364, 1371 (Fed. Cir. 2007)(a patent is anticipated if a single prior art reference discloses each and every claim limitation, either explicitly or inherently).

As an initial matter, throughout Plaintiff's Opposition, Plaintiff incorrectly states that the interstice size recited in claim 1 of the '852 patent is "less than about 3/16 inches in diameter." This is not what the claim recites, and it is not what the parties agreed to for claim construction. See Report and Recommendation, page 30 [DE #224]. Rather, the language of claim 1 of the '852 patent recites "an interstice size constructed and arranged to *prevent passage of* wind-borne objects greater than about 3/16 inch diameter," and similarly, the claim construction to which both parties agreed[3] is "having spacing between the warp or weft that *prevent the passage of* wind-borne objects with a diameter greater than approximately 3/16 inch." The significance of Plaintiff's mischaracterization will become evident from the following discussion.

In particular, Plaintiff discounts the express teachings and disclosures of Corliss which is directed to an apparatus structured and designed to maintain the integrity of building structures against the destructive forces of hurricanes and other like storms. Def. SOF ¶ 1. Referring to the interstice size recited in the '852 patent, it is important to note that at least one specific embodiment disclosed in Corliss includes a protective net device having a one-inch mesh construction, which would necessarily prevent passage of windborne objects of a greater size there through. For example, pursuant to the South Florida Building Code, the large missile of the large missile impact test comprises a piece of timber having nominal dimensions of 2 inches by 4 inches. Def. SOF ¶ 25. This 2x4 would be prevented from penetrating the one inch mesh size of at least one specific embodiment disclosed in Corliss. Of course, the 2x4 is greater than 3/16 inch diameter, and thus, Corliss does exlicitly include "interstices constructed and arranged to prevent passage of windborne objects greater than about 3/16 inch diameter."

---

[2] Claim 10 of the '852 patent recites, *inter alia*, "a textile material having. . . interstices in the range of 0.6 to 4.8 millimeter," and claim 1 of the '852 patent recites, *inter alia*, "providing a protective barrier device formed of a flexible mesh material having. . . interstices constructed and arranged to prevent passage of windborne objects greater than about 3/16 inch diameter."

[3] It bears note that Defendant purposefully sought a construction that did not require all or any object greater than 3/16 inch to be stopped.

Corliss also inherently discloses a protective device wherein "the strength and size of the mesh may be varied to suit different types of installations," (Corliss, col. 3, lns. 13-15), and that the protective device "functions to break up the velocity or damaging force of the winds and also of the rains" (Corliss, col. 2, lns. 55-56). Given that the average size and dimension of a typical rain drop is between 0.5 and 3 millimeters, in order for the device in Corliss to "function[] to break up the velocity or damaging force of the winds and also the rains," it must necessarily include small interstices such as in the range of 0.6 to 4.8 millimeter.[4] Furthermore, as acknowledged by Plaintiff, the prior art reference to Cros discloses a device having interstices in the range of 1.0 to 12 millimeters [DE #242 page 10], which is structured to achieve the asserted functions therein, namely, for the protection of a structure "especially against the action of *rain* and wind." The '888 patent to Cros, col. 1, lns. 59-60. There can be no better indicator of what one of ordinary skill in the art would recognize as inherent. Thus, it is commonly understood to one of ordinary skill in the art that in order to achieve the function of breaking up the velocity or damaging force of the winds and rains, as disclosed in Corliss, the device must necessarily include small interstices, e.g., in the range of 0.6 to 4.8 millimeters.

Nevertheless, the recited interstice size is also inherently disclosed in the prior art references to Sporta, Serge, Gitlin, and Parsons relating to protective devices structured and designed to maintain the integrity of building structures against hurricanes, high winds, and other unusually bad storms. Continental Can Co. v. Monsanto co., 948 F.2d 1264, 1269 (Fed. Cir. 1991)(inherent anticipation "accommodates situations where the common knowledge of technologists is not recorded in the reference"). This is particularly true in light of the fact that in 1994 (prior to Sporta, Serge and Parsons), the South Florida Building Code set forth the requirements for hurricane protections, and in particular, the burst strength, interstice size, and that the material is to be resistant to ultra violet, biological and chemical degradation.

In an effort to discount the clear text and teaching of the South Florida Building Code, Plaintiff incorrectly and improperly characterizes the *required* impact tests. Specifically, Plaintiff states that the Code *requires* certain structures to be subjected to the small missile impact test to determine resistance to windborne debris.[5] Not only is the Plaintiff's statement

---

[4] Exhibit A, Elert, Glen, The Physics Factbook, (2009), <www.hypertextbook.com/facts/2001/IgorVolynets.shtml>, citing to "Rain." Encylopedia Encarta. 1st ed. CD-ROM. New York: Microsoft, 2000.
[5] "At the time of the invention, the Code required 'wall cladding, outside doors, skylights, glazing, glass block, shutters and any other external protection devices' to be subjected to certain 'impact tests' to 'determine resistance

3

misleading in that it ignores other relevant portions of the Code as well as admissions specifically made by the patentee in the '085 patent,[6] but it is also wrong. Particularly, it is undisputed that in 1994 Section 6.3.2.3 of PA 201-94, i.e., the "Impact Test Procedures" of the Dade County Building Code Compliance Office states that "[a]ny specimen that passes the large missile impact test need *not* be tested for the small missile impact test *if the specimen has no opening that a 3/16 of an inch sphere can pass*." SOF ¶ 27. This language is strikingly similar to that found in claim 1 of the '852 patent, perhaps the source of Plaintiff's deceptive mischaracterizations. Moreover, Plaintiff argues that "[t]he interstice size recited in the asserted claims is at least *one half the size* (diameter) of the small missile projectile specified in the Code." In support thereof, Plaintiff essentially ignores the above statement recited in PA 201-94 and the '085 patent and instead relies on the small missile impact test – the very test that need not be performed "if the specimen has no opening that a 3/16 inch sphere can pass."

Furthermore, Plaintiff states that the textile material "having 0.6 to 4.8 millimeter or less than about 3/16 inches in diameter" has been shown to withstand forces over 11 times the test load required by the Code, and that the smaller interstice size is the source of this higher strength. This is not in contrast with the Code, and is not an unexpected result. Rather, the Code acknowledges that "if the specimen has no opening that a 3/16 of an inch sphere can pass" then the specimen need not even be subjected to additional testing via the small missile impact test. Accordingly, as the size of the interstices decreases, it is *expected* to withstand greater forces.[7]

Plaintiff seems to further suggest that by utilizing the direct insight and teachings from the South Florida Building Code (just as one of ordinary skill in the art would do at the time), Defendants are using considerations gained in hindsight to reconstruct the structural characteristics of the textile material in an attempt to avoid prior art. This is either a simple misunderstanding as to "hindsight" and/or inherent anticipation, or it is yet another one of Plaintiff's disingenuous mischaracterizations. Specifically, the impermissible use of hindsight and *ex post* reasoning includes reading the teachings of the invention at issue into the prior art so

---

to windborne debris' (citation omitted). One such impact test required resistance to penetration by a 3/8 inch diameter projectile." [DE #242 at page 4].

[6] "In some jurisdictions, it has been determined that wind blown debris of 3/16th of an inch or less poses no threat. Therefore, the weave construction must prevent passage of debris 3/16th of an inch or greater." The '085 patent, col. 5, lns. 34-37.

[7] In fact, it is interesting to note that despite specific statements made in the specification of the patents-in-suit, including that the strength was an inherent feature, patentee now wants to characterize the interstice size as a point of novelty and inventive element of the patents.

4

as to demonstrate invalidity. KSR, 550 U.S. at 422 (citing Graham v. John Deere, Co., 383 U.S. 1, 36 (1966)). As for inherent anticipation, a reference is an anticipatory reference under 35 U.S.C. § 102 if one of ordinary skill in the art would recognize that an element not expressly disclosed therein is necessarily present. Continental Can Co., 948 F.2d at 1269.[8] Thus, as one of ordinary skill in the art had access to and knowledge of the clear disclosure of the South Florida Building Code in 1994, one of ordinary skill in the art would recognize that the burst strength, interstice size, and resistance to ultra violet, biological and chemical degradation must necessarily be included within the hurricane protective barrier devices disclosed in the prior art in order for such devices to function and perform in their intended manner.

Referring now to the terms "said edges having means for securing said textile material to said structure" (claim 10 of the '085 patent) and "securing said protective barrier to said structure" (claim 1 of the '852 patent), Plaintiff seems to ignore the express teaching and disclosure of each of the prior art references. Specifically, Corliss discloses that, *inter alia*, it is "removably attached to the building structure." Corliss, col. 1, lns. 45-46. The prior art reference to Serge discloses that "the net 2 rests on the ridge tile line 4 of the roofing 3 and it stretched by slings 5 attached at outside points to the house…" (Serge, translation, page 3). Similarly, Gitlin discloses that the protective barrier can be attached to the roof of the structure, for example via a storage assembly (Gitlin, col. 4, lns. 18-27; FIGS 6-8). Furthermore, the "attachment means" and "anchor means" disclosed in Sporta are certainly structured to "secure" the *protective barrier* to the structure in that it is placed over and secured onto the structure. Moreover, Plaintiff even admits that "Parson[s] is directed to a flexible textile material hurricane protection system to be secured at least at its opposing edges to a structure in covering relation to one or more windows of an air traffic control tower." [DE #242 at pages 6-7].

Thus, Plaintff's contentions that the prior art fails to disclose "said edges having means for securing said textile material to said structure" and "securing said protective barrier to said structure" as such terms have been construed by the Court lacks merit.

### III. THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 103.

#### A. *Prima Facie* Case of Obviousness.

---

[8] See also KSR, 550 U.S. at 418 ("as our precedents make clear…the analysis [of prior art] need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ"); M.P.E.P. § 2144.01 ("in considering the disclosure of a reference, it is proper to take into account not only the specific teachings of the reference but also the inferences which one skilled in the art would reasonably be expected to draw therefrom").

In addition, the asserted claims are further invalid as being obvious under 35 U.S.C. § 103 in that, when any of the prior art references to Corliss, Sporta, Serge, Gitlin or Parsons are combined with either (a) admitted prior art from the patents-in-suit regarding known materials, (b) admitted prior art from the patents-in-suit regarding requirements of the building code, or (c) Cros, each of the limitations recited in the asserted claims are disclosed as known elements.

As an initial matter, Plaintiff asserts that Defendants' efforts to invalidate the '085 and '852 patents based upon Sporta, Gitlin, Cros and the admitted prior art "is especially difficult." Defendants' acknowledge that "[w]hen *no* prior art other than that which was considered by the PTO examiner is relied on" there is an added burden of overcoming the deference which is due to the PTO examiner. PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 (Fed. Cir. 2008)(emphasis added). However, where there is "no PTO review … on obviousness in view of [the asserted] references[,] the burden of proof … is more easily carried." AT&T Corp. v. Excel Communications, Inc., 1999 U.S. Dist. LEXIS 17871 at *72 (D. Del. 1999)(quoting EWP Corp. v. Reliance Universal Inc., 755 F.2d 898, 905 (Fed. Cir. 1985)). Significantly, the prior art references to Corliss,[9] Serge, and Parsons are new references that are far from cumulative and were not considered at all during prosecution of either the '085 or the '852 patents. Further, the prior art reference to Gitlin was not considered during the prosecution of the '085 patent. An obviousness analysis utilizing any one of these references is thus a new combination and, contrary to Plaintiff's assertions, would therefore not be subjected to any "added burden."[10]

Additionally, Plaintiff suggests that Defendants' use of the admitted prior art constitutes an impermissible use of "hindsight reconstruction" in an attempt to escape the prior art. Again, use of "hindsight" includes reading the teachings of the invention at issue into the prior art so as to demonstrate invalidity. KSR, 550 U.S. at 422 (citing Graham v. John Deere, Co., 383 U.S. 1, 36 (1966)). Defendants are in no way resorting to hindsight to support the clear *prima facie* case of obviousness. Rather, Defendants are permissibly using admissions in the specification of the patents-in-suit regarding known elements. In particular, the patentee admits that various

---

[9] The PTO in its recent grant of reexamination of the '085 patent noted that Corliss presents a substantial new question of patentability.

[10] As an additional point, at the time the patents-in-suit were examined some 10 years ago, the PTO Examiner was faced with the teaching-suggestion-motivation ("TSM") test for purposes of determining obviousness under 35 U.S.C. § 103. Since then, however, in 2007 the Supreme Court clarified the standard for obviousness and stated that the "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Int'l Co. v. Teleflex, Inc. 550 U.S. 398 (2007). To put it another way, the Supreme Court made it easier to make a determination of obviousness.

6

materials exhibiting the specific characteristics recited in the asserted claims (i.e., burst or fail strength, interstice size, and resistance to UV, biological ad chemical degradation) were <u>known</u>. SOF ¶¶ 34, 41-43, 48-49.  Further, the patentee admits that the Code dictated certain tolerances and properties for hurricane protection (SOF ¶¶ 35-36) and that the South Florida Building Code defines the specific burst strength and the minimum interstice sizes (SOF ¶¶ 23-27).  Contrary to what the Plaintiff wants this Court to believe, these admissions are not, in any manner, preferred embodiments, but are rather explicit admissions as to <u>*known elements*</u> and <u>*prior art*</u>.  Such admissions are relevant to the obviousness analysis and are not hindsight reconstructions.

Finally, although Plaintiff acknowledges that Cros discloses a mesh having interstices sizes in the range of 1.0 to 12 millimeters (a range which reads directly on the asserted claims), Plaintiff attempts to dispel its significance with the erroneous statement that "one of ordinary skill in the relevant art would have understood that the mesh size would not have provided protection for the buildings described in Cros…from projectiles traveling at hurricane/gale force wind speeds."  Plaintiff's flaws fall directly in the hands of the typical obviousness-type analysis which is shown by combining two or more existing prior art references.  <u>Scripps Clinic & Research Foundation v. Genetech, Inc.</u>, 927 F.2d 1565, 1577 (Fed. Cir. 1991)("[i]f it is necessary to reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention, the proper ground is…§ 103 obviousness").  Simply put, Cros is directed to a protective barrier device for a structure, which provides an "effective barrier against wind," "has excellent mechanical strength," and "affords exceptional resistance to aging under the action of water and ultraviolet rays."  Thus, one of ordinary skill in the art would certainly look to Cros in combination with other prior art references, such as Corliss, Sporta, the South Florida Building Code, and/or admitted prior art which do provide protection from projectiles, to name a few, in order to arrive at the device recited in the asserted claims.

### B.     Secondary Considerations.

Once a *prima facie* case of obvious is met, "the party relying on validity is then obligated to come forward with evidence to the contrary." <u>PowerOasis</u>, 522 F.3d at 1305 (quoting <u>Ralston Purina Co. v. Far-Mar-Co, Inc.</u>, 772 F.2d 1570, 1573 (Fed. Cir. 1985)).  Plaintiff has failed to meet this burden.  Moreover, even if Plaintiff were able to bring forth an even plausible argument, it would not overcome the strong *prima facie* case of obviousness. <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u>, 550 F.3d 1356, 1368 (Fed. Cir. 2008)(stating that "[s]econdary

7

considerations of non-obviousness…cannot overcome [a] strong *prima facie* case of obviousness.") The *prima facie* case of obviousness is especially strong here in that when referring to local building codes and testing procedures, the patentee has even admitted that it "is *obvious* to one skilled in the art…to qualify for [standardized testing] even in situations in which standards do not apply." The '085 patent, col. 1, lns. 47-49 (emphasis added). Thus, the asserted claims should be deemed invalid as it would have been clearly obvious to follow the standard of the South Florida Building Code at least as to the strength, the interstice size, and the ability to be resistant to ultra violet, biological and chemical degradation to arrive at the device claimed.

In addition, it is established case law that in order to constitute objective evidence of non-obviousness, "the subject matter offered as evidence must be commensurate in scope with the claims." In re Youngblood, 1999 U.S. App. LEXIS 15024 at *23 (Fed. Cir. 1999); Friction Division Products, Inc. v. E.I. Du Pont De Nemours & Co., 693 F.Supp. 114, (D. Del. 1988). Plaintiff has failed to establish that any of the proffered secondary considerations are commensurate in scope with the claims of the asserted patents. Nevertheless, each one is addressed in turn below.

### 1. Commercial Success.

As an initial matter, Plaintiff has failed to establish the required nexus between the merits of the claimed invention and the "evidence" of commercial success. Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006)("[e]vidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success"); Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1324 (Fed. Cir. 2004)("[o]ur cases make clear that a 'nexus must be established between the merits of the claimed invention as evidence of commercial success before that evidence may become relevant to the issue of obviousness'"). Thus, if the alleged commercial success is due to, for example, an unclaimed feature of the device, or if the feature that caused the alleged commercial success was known in the prior art, then the commercial success is *irrelevant*. Ormco, 463 F.3d at 1312. Specifically, Plaintiff has not and cannot establish that the product(s) that generated the alleged commercial success was commensurate in scope with the asserted claims of the patents-in-suit. Rather, Plaintiff merely resorts to bald, unsupported statements relating to the parties' sales figures. In fact, over 70% of the alleged $42 million in Plaintiff's sales occurred after the product had been on the market for nine (9) years.

8

In addition, even if the Plaintiff were able to demonstrate the required nexus, raw sales figures are wholly insufficient as evidence for "commercial success." In particular, without evidence that the sales are a substantial quantity of the relevant market, its "bare sales numbers are a weak showing of commercial success, if any." In re Youngblood, 1999 U.S. App. LEXIS 15024 at *24-25 (Fed. Cir. 1999)(citing In re Huang, 100 F.3d 135, 140 (Fed. Cir. 1996)); Ex Parte Anderson, 21 U.S.P.Q.2d 1241, 1258 (Bd. Pat. App. & Interferences 1991)("Merely specifying sales figures alone is not sufficient to establish commercial success").

### 2. Copying, Acclamation, and Prior Failures

It is an undisputed fact that Defendant Brian Rist was testing a fabric-based hurricane protection system prior to the patents-in-suit. And while Plaintiff would have this Court believe that despite this compelling undisputed fact, Mr. Rist later copied Plaintiff product, this conclusion is unfounded and insufficient to establish copying by others. Instead, the evidence is clear, as was mentioned above regarding prior art, that many individuals like Cros, Corliss and Sporta had invented and perfected fabric hurricane protection systems. See Elochem, Inc. v. Southern California Edison Co., 227 F.3d 1361, 1380 (Fed. Cir. 2000)("a showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling indicia of other secondary considerations"). The existence of this prior art along with Mr. Rist's testing is a fact that Plaintiff cannot refute by merely stating that Mr. Rist abandoned his efforts, which is wholly not true. Again, Plaintiff seeks by avoid the inevitable determination of invalidity with unfounded conclusions and inaccurate representations.

This fact is further evidenced by Plaintiff's alleged accolades. In yet another attempt to prove ingenuity, the Plaintiff claims that it received a nomination for the Governor's award for innovation in technology. However, the only evidence proffered for this "nomination" is Plaintiff's own website which fails to state the date of said nomination and/or any information regarding the same. As such, this alleged accolade is unreliable since the Court does not know when, how, why or if the same was bestowed on the Plaintiff. As if this was not cause enough for suspicion as to Plaintiffs accolades, the other accolade proffered by Plaintiff is based wholly on a recent letter by Ted Gower to the Miami-Dade County Building Code Compliance Office wherein he states the alleged accolade and an unauthenticated author handwrites that he confirms it. This constructed evidence is not only unreliable but alarmingly indicative of Plaintiff's inability to meet its burden to show objective evidence of non-obviousness.

**IV.     Lost Profits.**

Defendants maintain that the Plaintiff is not entitled to loss profits because it is unable to prove that it would have received additional profits but for the infringement.  In fact, Plaintiff's very own documents prove that Plaintiff could not keep the business it had let alone take on more business.  Plaintiff makes much of its longevity and success but fails to mention that while in business since 1998, Plaintiff was not successful in the marketing of the product it claims is covered by the patents until 2005.  In fact, it can be said that Plaintiff succeeded despite itself.  Plaintiff was, as were all manufactures of hurricane protection, the beneficiary of a spectacular demand for hurricane products during a period of enormous property equity growth.  However during this hurricane protection boom, Plaintiff found itself contending with disgruntled customers, angry suppliers and public relations issues.

Rather than answer to these issues and the statements made by Plaintiff's own representatives, Plaintiff seeks to distract this Court from a determination on loss profits by stating that "Defendants take a myopic view of the market." DE 242 at pg. 14.  Ironically, the only party suffering from blindness of any sort is the Plaintiff.  So much so that Plaintiff now conveniently argues that other forms of hurricane protection are not alternatives even though the '852 patent states that "[i]t is important that the material affords sufficient impact protection to meet the regulatory agencies' requirements in order for this to be a viable alternative to other hurricane protection mechanisms." While Plaintiff spends much time characterizing Defendants' arguments, it fails to deal with the issues raised by the same, namely, the custom nature of the product, the dealer paradigm, and the role of non-fabric hurricane protection products.  Most notably, however, Plaintiff seeks to shield itself from not only the non-infringing substitutes, but also from other fabric hurricane protection products by citing its damages expert as its only authority, and neglecting the thousands of documents produced in discovery which establish the true nature of the hurricane protection industry.

Once again, Defendants find themselves in a position wherein doing the right thing is now actionable.  Specifically, the fact that Mr. Rist legitimately purchased and installed Plaintiff's product in an area that required a juxtaposed installed product is now being characterized as evidence of copying, even though Mr. Rist maintains that his product could not have been installed at said project.  Finally, Plaintiff seeks to use Mr. Rist's email, which are settlement discussions, as evidence of head-to-head competition.

WHEREFORE Defendants respectfully request that this Court grant its motion for Summary Judgment that the asserted claims are invalid, Plaintiff is not entitled to lost profits, Defendants have not violated the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 to 501.213); and Defendants have not tortiously interfered with Armor Screen Corporation's ("Plaintiff" or "Armor Screen") business relationship(s).

Respectfully submitted,

Dated: April 2, 2009
      Miami, Florida

/s/ Benjamin M. Hanrahan__
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
David A. Gast
Florida Bar No. 165,57
dgast@malloylaw.com
Benjamin M. Hanrahan
Florida Bar No. 27,859
bhanrahan@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida  33129
Telephone: (305) 858-8000
Facsimile:  (305) 858-0008

Attorneys for Defendants Storm Catcher, Inc., Storm Smart Industries, Inc., Storm Smart Building Systems, Inc., Storm Smart Sales, Inc., Smart Tracks, Inc., and Brian Rist.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-81091-CIV-RYSKAMP/VITUNAC

ARMOR SCREEN CORPORATION,
a Florida corporation,

    Plaintiff,

vs.

STORM CATCHER, INC. a Florida
Corporation, STORM SMART
INDUSTRIES, INC., a Florida Corporation,
STORM SMART BUILDING SYSTEMS,
INC., a Florida Corporation, STORM SMART
SALES, INC., a Florida Corporation, SMART
TRACKS, INC., a Florida Corporation,
BRIAN RIST, an Individual, and,
STEPHEN JOHNSON, an Individual,

    Defendants.
_____/

## CERTIFICATE OF SERVICE

    I hereby certify that on April 2, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                        /s/ Benjamin M. Hanrahan
                                        Benjamin M. Hanrahan
                                        Florida Bar No. 27,859

## SERVICE LIST
ARMOR SCREEN CORPORATION v. STORM CATCHER, INC., ET AL.
United States District Court, Southern District of Florida
Case No. 07-81091-CIV-RYSKAMP/VITUNAC

Robert C. L. Vaughan
rvaughan@ssd.com
Javier A. Lopez
jalopez@ssd.com
SQUIRE, SANDERS & DEMPSEY, LLP
200 South Biscayne Boulevard
Suite 4000
Miami, Florida 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001
Attorneys for Plaintiff.
Notices of Electronic Filing
generated by CM/ECF.

John A. Burlingame
jburlingame@ssd.com
Jeremy W. Dutra
jdutra@ssd.com
SQUIRE, SANDERS & DEMPSEY, LLP
1201 Pennsylvania Avenue NW
Suite 500
Washington, DC 20004
Telephone: (202) 626-6871
Facsimile: (202) 626-6780
Attorneys for Plaintiff.
Served via first class U.S. mail,
postage pre-paid.

Lawrence D. Smith
lsmith@waltonlantaff.com
Francis A. Scaglia
fscaglia@waltonlantaff.com
WALTON, LANTAFF, SCHROEDER & CARLSON, LLP
9350 South Dixie Highway
10th Floor
Miami, Florida 33156
Telephone: (305) 671-1300
Facsimile: (305) 670-7065
Attorneys for Defendant
Stephen Johnson.
Notices of Electronic Filing
generated by CM/ECF.

John Cyril Malloy, III
jcmalloy@malloylaw.com
Peter A. Matos
pmatos@malloylaw.com
Andrew W. Ransom
Florida Bar No. 964,344
aransom@malloylaw.com
John Fulton, Jr.
Florida Bar No. 173,800
jfulton@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone: (305) 858-8000
Facsimile: (305) 858-0008
Attorneys for Defendants Storm Catcher, Inc., Storm Smart Building Systems, Inc., Storm Smart Sales, Inc., Storm Smart Industries, Inc., Smart Tracks, Inc. and Brian Rist.
Notices of Electronic Filing
generated by CM/ECF.