UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-81091-CIV-RYSKAMP/VITUNAC

ARMOR SCREEN CORPORATION,
      a Florida corporation,

          Plaintiff,

   vs.

STORM CATCHER, INC.,
      a Florida Corporation,
STORM SMART INDUSTRIES, INC.,
      a Florida Corporation,
STORM SMART BUILDING SYSTEMS, INC.,
      a Florida Corporation,
STORM SMART SALES, INC.,
      a Florida Corporation,
SMART TRACKS, INC.,
      a Florida Corporation,
BRIAN RIST,
      an Individual, and
STEPHEN JOHNSON,
      an Individual,

          Defendants.
_____/


## DEFENDANTS' PROPOSED JURY INSTRUCTIONS


  Defendants Storm Catcher, Inc., Storm Smart Industries, Inc., Storm Smart Building Systems, Inc., Storm Smart Sales, Inc., Smart Tracks, Inc., and Brian Rist (collectively, "the Defendants"), hereby file their Proposed Jury Instructions and state as follows:

**PROPOSED JURY INSTRUCTION NO. 1**

**COURT'S INSTRUCTIONS BEFORE TRIAL.**

Ladies and Gentlemen:

You have now been sworn as the Jury to try this case.  By your verdict you will decide the disputed issues of fact.

I will decide all questions of law and procedure that arise during the trial, and, before you retire to the jury room at the end of the trial to deliberate upon your verdict and decide the case, I will explain to you the rules of law that you must follow and apply in making your decision.

The evidence presented to you during the trial will primarily consist of the testimony of the witnesses, and tangible items including papers or documents called "exhibits."

Eleventh Circuit Pattern Jury Instructions, Preface at xvii

GRANTED        _____

DENIED         _____

MODIFIED       _____

**PROPOSED JURY INSTRUCTION NO. 2**

**TRANSCRIPTS NOT AVAILABLE**

You should pay close attention to the testimony because it will be necessary for you to rely upon your memories concerning what the testimony was.  Although, as you can see, the Court Reporter is making a stenographic record of everything that is said, typewritten transcripts will not be prepared in sufficient time or appropriate form for your use during your deliberations and you should not expect to receive them.

Eleventh Circuit Pattern Jury Instructions, Preface at xvii

GRANTED      _____

DENIED        _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 3**

**EXHIBITS WILL BE AVAILABLE**

On the other hand, any exhibits admitted in evidence during the trial <u>will</u> be available to you for detailed study, if you wish, during your deliberations.  So, if an exhibit is received in evidence but is not fully read or shown to you at the time, don't be concerned because you will get to see and study it later during your deliberations.

Eleventh Circuit Pattern Jury Instructions, Preface at xviii

GRANTED      _____

DENIED        _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 4
## <u>NOTE-TAKING PERMITTED</u>

If you would like to take notes during the trial you may do so.  On the other hand, of course, you are not required to take notes if you do not want to.  That will be left up to you, individually.

If you do decide to take notes, do not try to write everything down because you will get so involved in note-taking that you might become distracted from the ongoing proceedings.  Just make notes of names, or dates and places - - things that might be difficult to remember.

Also, your notes should be used only as aids to your memory, and, if your memory should later differ from your notes, you should rely upon your memory and not your notes.

If you do not take notes, you should rely upon your own independent recollection or memory of what the testimony was and you should not be unduly influenced by the notes of other Jurors. Notes are not entitled to any greater weight than the recollection or impression of each Juror concerning what the testimony was.

Eleventh Circuit Pattern Jury Instructions, Preface at xviii

GRANTED     _____
DENIED       _____
MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 5
### WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to two United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other

things, whether each claim defines an invention that is new, useful, and not obvious in view of one or more prior art references considered either alone or in combination with one another.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."  The prosecution history, and all of its material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.


Model Patent Jury Instructions for the Northern District of California, October 9, 2007, § A.1


GRANTED        _____

DENIED         _____

MODIFIED       _____

## PROPOSED JURY INSTRUCTION NO. 6
## <u>SUMMARY OF CONTENTIONS</u>

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The case involves two United States patents obtained by Ted Gower, and transferred by Ted Gower through a series of assignments to the Plaintiff, Armor Screen Corporation. The patents involved in this case are United States Patent Numbers 6,325,085 and 6,865,852, both of which list Ted Gower as the sole inventor. For convenience, the parties and I will often refer to these patents as the '085 patent and the '852 patent, respectively.

Armor Screen Corporation filed suit in this court seeking money damages from Defendants, Storm Catcher, Inc., Storm Smart Industries, Inc., Storm Smart Building Systems, Inc., Storm Smart Sales, Inc., Smart Tracks, Inc., Brian Rist, and Stephen Johnson, for allegedly infringing the '085 patent and the '852 patent by making, using, selling, and offering for sale products that Armor Screen Corporation argues are covered by claim 10 of the '085 patent and claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent. For convenience, the parties and I may collectively refer to these claims as "the asserted claims." Armor Screen Corporation also argues that the Defendants have actively induced infringement of the asserted claims by others and contributed to the infringement of these claims by others. The products that are alleged to infringe are the Storm Catcher Strap & Buckle Screen, Storm Catcher Grommet Screen, Storm Catcher Slide Screen and Storm Catcher Rolling Screen.

The Defendants deny that they have infringed claim 10 of the '085 patent or claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent, and argue that, in addition, the claims are invalid and/or unenforceable. In particular, the Defendants contend that the asserted claims are invalid because, for instance, they were known or used by others in this country or patented or described in a printed publication in any country, before the alleged invention, or in use or on sale more than one year prior to the application date. In addition, Defendants contend that the asserted claims are invalid because it would have been obvious for a person of ordinary skill in the art to have practiced the alleged invention, that the patents do not enable one of ordinary skill in the art to practice the alleged invention, and that the patents do not teach the best mode for carrying out the alleged invention known to the inventor at the time of filing. In addition, the Defendants

contend that '852 patent is unenforceable due to inequitable conduct which occurred during the prosecution of the '852 patent.

Your job will be to decide whether claim 10 of the '085 patent or claims 1, 2, 3, 4, 6, 8 or 9 of the '852 patent have been infringed and whether those claims are invalid.  If you decide that any claim of the '085 patent or the '852 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Armor Screen Corporation to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

Model Patent Jury Instructions for the Northern District of California, October 9, 2007, § A.3

GRANTED        _____

DENIED         _____

MODIFIED       _____

## PROPOSED JURY INSTRUCTION NO. 7
## <u>GENERAL / OVERVIEW OF TRIAL PROCEEDING</u>

During the trial you should keep an open mind and should avoid reaching any hasty impressions or conclusions. Reserve your judgment until you have heard <u>all</u> of the testimony and evidence, the closing arguments or summations of the lawyers, <u>and</u> my instructions or explanations to you concerning the applicable law.

Because of your obligation to keep an open mind during the trial, coupled with your obligation to then decide the case only on the basis of the testimony and evidence presented, you must not discuss the case during the trial in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence; and you should avoid reading any newspaper articles that might be published about the case. You should also avoid seeing or hearing any television or radio comments about the trial.

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been nor should you draw any inferences or conclusions from the question itself.

During the trial it may be necessary for me to confer with the lawyers from time to time out of your hearing with regard to questions of law or procedure that require consideration by the court or judge alone. On some occasions you may be excused from the courtroom for the same reason. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

The order of the trial's proceedings will be as follows: In just a moment the lawyers for each of the parties will be permitted to address you in turn and make what we call their "opening statements." The Plaintiff will then go forward with the calling of witnesses and presentation of evidence during what we call the Plaintiff's "case in chief." When the Plaintiff finishes (by announcing "rest"), the Defendants will proceed with witnesses and evidence, after which, within certain limitations, the Plaintiff may be permitted to again call witnesses or present evidence

during what we call the "rebuttal" phase of the trial.  The Plaintiff proceeds first, and may rebut at the end, because the law places the burden of proof or burden of persuasion upon the Plaintiff (as I will further explain to you as a part of my final instructions).

When the evidence portion of the trial is completed, the lawyers will then be given another opportunity to address you and make their summations or final arguments in the case, after which I will instruct you on the applicable law and you will then retire to deliberate upon your verdict.

Now, we will begin by affording the lawyers for each side an opportunity to make their opening statements in which they may explain the issues in the case and summarize the facts they expect the evidence will show.

I caution you that the statements that the lawyers make now (as well as the arguments they present at the end of the trial) are not to be considered by you either as evidence in the case or as your instruction on the law.  Nevertheless, these statements and arguments are intended to help you understand the issues and the evidence as it comes in, as well as the positions taken by both sides.  So I ask that you now give the lawyers your close attention as I recognize them for purposes of opening statements.

Eleventh Circuit Pattern Jury Instructions, Preface at xix

GRANTED        _____

DENIED         _____

MODIFIED       _____

## PROPOSED JURY INSTRUCTION NO. 8

## <u>BASIC INSTRUCTIONS AT CLOSE OF EVIDENCE</u>.

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions - - what we call your deliberations.

Eleventh Circuit Pattern Jury Instructions, p. 9

GRANTED      _____

DENIED        _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 9**

<u>**CONSIDERATION OF THE EVIDENCE – DUTY TO FOLLOW INSTRUCTIONS**</u>

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence - - that is, the testimony of the witnesses and the exhibits I have admitted in the record - - but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

Eleventh Circuit Pattern Jury Instructions, § 2.2

GRANTED      _____

DENIED        _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 10**

**CREDIBILITY OF WITNESSES**

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions:  Did the witness impress you as one who was telling the truth?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome of the case?  Did the witness seem to have a good memory?  Did the witness have the opportunity and ability to observe accurately the things he or she testified about?  Did the witness appear to understand the questions clearly and answer them directly?  Did the witness' testimony differ from other testimony or other evidence?

Eleventh Circuit Pattern Jury Instructions, § 3

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 11**

**<u>IMPEACHMENT OF WITNESSES – INCONSISTENT STATEMENT</u>**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Eleventh Circuit Pattern Jury Instructions, § 4.1

GRANTED   _____

DENIED   _____

MODIFIED   _____

**PROPOSED JURY INSTRUCTION NO. 12**

**EXPERT WITNESSES – GENERAL INSTRUCTION**

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion.  The same as with any other witness, it is up to you to decide whether to rely upon it.

Eleventh Circuit Pattern Jury Instructions, § 5.1

GRANTED      _____

DENIED       _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 13**

**EXPERT WITNESSES – WHEN EXPERT WITNESS FEES**

**REPRESENT A SIGNIFICANT PORTION OF THE WITNESS' INCOME**

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion.  The same as with any other witness, it is up to you to decide whether to rely upon it.

When a witness has been or will be paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such a witness where court testimony is given with regularity and represents a significant portion of the witness' income.

Eleventh Circuit Pattern Jury Instructions, § 5.2

GRANTED       _____

DENIED        _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 14
## <u>BURDEN OF PROOF</u>

In this case it is the responsibility of the Plaintiff to prove every essential part of the Plaintiff's claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

Here, since more than one claim is involved and more than one defense is asserted, you should consider each claim and each defense separately, but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them..

If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendants as to that claim.

Eleventh Circuit Pattern Jury Instructions, §§ 6.1 and 6.2

GRANTED    _____

DENIED       _____

MODIFIED    _____

## PATENT INSTRUCTIONS AT THE CLOSE OF EVIDENCE

### PROPOSED JURY INSTRUCTION NO. 15
### CLAIM CONSTRUCTION – GENERALLY

Before you decide whether the Defendants have infringed the claims of the Plaintiff's patents or whether the Plaintiff's patents are invalid, you will have to understand the claims of the patents.  The patents' claims are numbered sentences at the end of the patents.  The patent claims involved here are claim 10 of the '085 patent, beginning at column 7, line 24, of the '085 patent, and claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent, beginning at column 11, line 33, of the '852 patent.  The claims are intended to define, in words, the boundaries of the invention.  Only the claims of the patents can be infringed.  Neither the written description, nor the drawings of the patents can be infringed.  Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

AIPLA Model Jury Instructions, March 2008, § 2.0

35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1988) [as cited in AIPLA Model Jury Instructions, March 2008, § 2.0]

GRANTED          _____

DENIED            _____

MODIFIED        _____

**PROPOSED JURY INSTRUCTION NO. 16**

**CLAIM CONSTRUCTION FOR THE CASE**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.

The following terms in claim 10 of the '085 patent shall be construed as follows:

(A) "Storm survival kit" means "a protective barrier device configured to bequickly deployed on or within a portion of a structure for protecting an interior portion of the structure from the force of the wind and objects carried thereby."

(B) "Protecting a portion of the interior of a structure from the force of the wind and objects carried thereby." means "a protective barrier device configured to be quickly deployed on or within a portion of a structure for protecting an interior portion of the structure from the force of the wind and objects carried thereby."

(C) "A textile material" means "a woven, knitted, nonwoven or extruded material."

(D) "Having a fail strength of between 61.3 and 675 pounds per square inch" means "the maximum stress at which the textile material bursts, being between 61.3 and 675 pounds per square inch."

(E) "Interstices in the range of 0.6 to 4.8 millimeter" means "having spacing between the warp or weft that are between about 0.6 millimeters and 4.8 millimeters."

(F) "At least two opposing edges" does not require further construction as the ordinary meaning is readily apparent.

(G) "Said edges having means for securing said textile material to said structure" means "a fastener or fasteners configured for installation or mounting on an interior or exterior surface of a structure that cooperate with fasteners secured to or formed integral with edges of the textile material for the purpose of securing or connecting the textile material to the structure."

The following terms in independent claim 1 of the '852 patent shall be construed as follows:

20

(A) "A process for maintaining the integrity of a structure containing frangible portions subject to impact from windborne objects" does not require further construction as the ordinary meaning is readily apparent.

(B) "A protective barrier device formed of a flexible mesh material" means "a protective barrier device in the form of one or more panels of a flexible textile material that acts as a barrier against wind and windborne objects."

(C) "A burst strength greater than 61.3 psi" means "the maximum stress at which the textile material bursts when impacted by a blunt wind-borne object is greater than 61.3 pounds per square inch."

(D) "An interstice size constructed and arranged to prevent passage of windborne objects greater than about 3/16 inch in diameter" means "having spacing between the warp or weft that prevent the passage of wind-borne objects with a diameter greater than approximately 3/16 inch."

(E) "Positioning said protective barrier device in a juxtaposed relation to said frangible portions of said structure" means "the protective barrier device is positioned in front of the frangible portions, and is spaced apart from the frangible portions of the structure at a minimum calculable distance."

(F) "Securing said protective barrier to said structure" means "connecting at least one edge of the protective barrier device to the structure."

(G) "Said protective barrier provides reduction of wind force sufficient to maintain the integrity of said structure" does not require further construction as the ordinary meaning is readily apparent.

(H) "Said protective barrier device is resistant to ultra violet, biological, and chemical degradation" does not require further construction as the ordinary meaning is readily apparent.

The following terms in dependent claim 2 of the '852 patent shall be construed as follows:

(A) "At least one panel" does not require further construction as the ordinary meaning is readily apparent.

(B) "Peripheral hem" means "at least one panel includes a hem along its perimeter."

(C) "Adapted to secure said panel to said structure" means "one or more edges of the panel includes a hem along its perimeter that incorporates a fastening structure for connecting the panel to the structure."

The following term in dependent claim 3 of the '852 patent "the process of Claim 1 wherein said protective barrier device is a textile formed from synthetic threads" does not require further construction as the ordinary meaning is readily apparent.

The following terms in dependent claim 4 of the '852 patent "the process of claim 2 wherein said synthetic threads are polypropylene" does not require further construction as the ordinary meaning is readily apparent.

The following terms in dependent claim 6 of the '852 patent "the process of claim 2 wherein said panel is transparent" does not require further construction as the ordinary meaning is readily apparent.

The following term in dependent claim 8 of the '852 patent "a plurality of releasable fasteners for attachment of said protective barrier to said structure" does not require further construction as the ordinary meaning is readily apparent.

The following terms in dependent claim 9 of the '852 patent "a plurality of said panels" and "each said panel having parallel edges being releasably connected to said structure by a plurality of cooperating releasable fasteners spaced therealong" do not require further construction as the ordinary meaning is readily apparent.

To the extent any other words or phrases exist in the asserted claims, you should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.


AIPLA Model Jury Instructions, March 2008, § 2.1


*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc) *aff'd,* 517 U.S. 370 (1996) [as cited in AIPLA Model Jury Instructions, March 2008, § 2.1]


GRANTED        _____

DENIED          _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 18
## <u>INFRINGEMENT – GENERALLY</u>

I will now instruct you as to the rules you must follow when deciding whether the Plaintiff has proven that the Defendants infringed claim 10 of the '085 patent or claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, the Plaintiff alleges that the Defendants' allegedly infringing product infringes claim 10 of the '085 patent and claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent.

You have heard evidence about both the Plaintiff's product and the Defendants' accused product.  However, in deciding the issue of infringement you must <u>not</u> compare the Defendants' accused product to the Plaintiff's product.  Rather, you must compare the Defendants' accused product <u>only to the claims</u> of the patents when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused product is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

AIPLA Model Jury Instructions, March 2008, § 3.0

35 U.S.C. § 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*,517 U.S. 370 (1996) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.0].

GRANTED      _____

DENIED      _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 19

## DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR

## <u>INTENT TO INFRINGE IS IMMATERIAL</u>

In this case, the Plaintiff asserts that the Defendants have directly infringed the '085 patent and the '852 patent.  The Defendants would be liable for directly infringing the Plaintiff's patents only if you find that the Plaintiff has proven that it is more likely than not that the Defendants have made, used, offered to sell, or sold the invention defined in at least one claim of the Plaintiff's patents.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

AIPLA Model Jury Instructions, March 2008, § 3.1

35 U.S.C. § 271(a); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.1].

GRANTED      _____

DENIED      _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 20
## <u>DIRECT INFRINGEMENT – LITERAL INFRINGEMENT</u>

To determine literal infringement, you must compare the accused product with each claim that the Plaintiff asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if the Defendants' product includes each and every element in that patent claim. Here, Defendants have four products accused of infringing the asserted claims of the '085 and '852 patents; the Storm Catcher Strap & Buckle Screen, the Storm Catcher Grommet Screen, the Storm Catcher Rolling Screen, and the Storm Catcher Slide Screen. You must compare each accused product to each asserted claim, and determine whether each individual accused product infringes any of the asserted claims. If the Defendants' product does not contain one or more elements recited in a claim, that product does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually, and each accused product individually.

The accused products should be compared to the invention described in each patent claim it is alleged to infringe, not to the Plaintiff's preferred or commercial embodiment of the claimed invention.

AIPLA Model Jury Instructions, March 2008, § 3.2

*BMC Resources v. Paymentech, L.P.,* 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.,* 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber,* 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481-82 (Fed. Cir. 1984) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.2].

GRANTED       _____

DENIED        _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 21**

**INDUCING PATENT INFRINGEMENT**

The Plaintiff asserts that one or more of the Defendants have actively induced others to infringe the '085 patent and the '852 patent.

To show induced infringement, the Plaintiff must prove that it is more likely than not that someone has directly infringed the patents and that the Defendants have actively and knowingly aided and abetted that direct infringement.  The Plaintiff must show that the Defendants actually intended to cause the acts that constitute direct infringement, that the Defendants knew of the patent, and that the Defendants knew or should have known that its actions would lead to actual infringement.

Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement.  It is not necessary to show that the Defendants have directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, there can be no induced infringement.

AIPLA Model Jury Instructions, March 2008, § 3.3

35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp.  v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.3].

GRANTED    _____

DENIED     _____

MODIFIED   _____

## PROPOSED JURY INSTRUCTION NO. 22
## <u>CONTRIBUTORY INFRINGEMENT</u>

The Plaintiff asserts that one or more of the Defendants has contributed to another's infringement.  To show contributory infringement, the Plaintiff must prove that it is more likely than not that there was contributory infringement.

It is not necessary to show that the Defendants have directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, the Defendants cannot have contributed to the infringement of the patent.

If you find someone has directly infringed, then contributory infringement exists if:

(1)     the Defendants sold, offered for sale, or imported;

(2)     a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

(3)     with knowledge that the component was especially made or adapted for use in an infringing product.

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.


AIPLA Model Jury Instructions, March 2008, § 3.4


35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.4].


GRANTED     _____

DENIED      _____

MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 24
## <u>INFRINGEMENT OF DEPENDENT CLAIMS</u>

There are two different types of claims in the patent.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, claim 1 of the '852 patent is an independent claim and recites several elements.  Claim 2 of the '852 patent is a dependent claim that refers to claim 1 and includes an additional element.  In particular, claim 2 includes all of the limitations of claim 1 plus the additional limitation of "wherein said protective barrier device is formed as at least one panel including a peripheral hem adapted to secure said panel to said structure."  Claim 2 therefore requires each of the elements of claim1, as well as the additional elements identified in claim 2 itself.

To establish literal infringement of a Dependent Claim, the Plaintiff must show that it is more likely than not that the Defendants' product includes each and every element of the Dependent Claim.

If you find that the Independent Claim from which a Dependent Claim depends is not literally infringed, then you cannot find that the Dependent Claim is literally infringed.

AIPLA Model Jury Instructions, March 2008, § 3.6

*Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (*citing Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.,* 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1552-53 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 626 (Fed. Cir. 1985) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.6].

GRANTED      _____

DENIED        _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 25**

**INFRINGEMENT OF OPEN ENDED OR "COMPRISING" CLAIMS**

The preamble to the independent claims use the term "comprising".  The word "comprising" means "including the following but not excluding others."

If you find that the Defendant' product includes all of the elements in the independent claims, the fact that the Defendants' product might include additional components would not avoid literal infringement of a claim that uses "comprising" language.

AIPLA Model Jury Instructions, March 2008, § 3.7

*Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.7]

GRANTED      _____

DENIED        _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 26**

**DIRECT INFRINGEMENT – INFRINGEMENT UNDER**

**THE DOCTRINE OF EQUIVALENTS**

If you decide that the Defendants' product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."  Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one part of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the claim requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement.  The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents.  The same element of the accused product may satisfy more than one element of a claim.

AIPLA Model Jury Instructions, March 2008, § 3.11

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997); *Graver Tank & Mfg. Co, v. Linde Air Prods. Co.,* 339 U.S. 605, 609 (1950); *Johnson & Johnston Assoc. v. R.E.*

*Service Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.11].

GRANTED   _____

DENIED    _____

MODIFIED  _____

**PROPOSED JURY INSTRUCTION NO. 27**

**LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS – PRIOR ART**

You may not find that a component in the Defendants' product is equivalent to an element of the patent claim if by doing so the patent claim would cover products that were already in the prior art.

AIPLA Model Jury Instructions, March 2008, § 3.12

*Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576-77 (Fed. Cir. 1994); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677 (Fed. Cir. 1990) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.12].

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 28**

**LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS –**

**PROSECUTION HISTORY ESTOPPEL**

You are instructed that the doctrine of equivalents is limited by what is called "prosecution history estoppel."  As you have already heard, during prosecution of the patent, the patent applicant often makes arguments and amendments in an attempt to convince the PTO examiner to grant the patent.  The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once it has done so, it is not entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that was used to distinguish the invention during the prosecution of the patent.

AIPLA Model Jury Instructions, March 2008, § 3.13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 30-34 (1997); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.13].

GRANTED       _____

DENIED         _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 29
## LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS –
## <u>SUBJECT MATTER DEDICATED TOTHE PUBLIC</u>

When a patent discloses subject matter but does not claim it, the patentee has dedicated that unclaimed subject matter to the public.  If you find that the '085 patent or the '852 patent discloses, but does not claim, subject matter alleged to be equivalent to an element of the patent claim, then you cannot find that the component alleged to be equivalent in the Defendants' product is equivalent to that element of the patent claim.  This is true even if the failure to claim the subject matter was wholly unintentional.

AIPLA Model Jury Instructions, March 2008, § 3.14

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378-79 (Fed. Cir. 2005); *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326 (Fed. Cir. 2004); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002) (en banc) [as cited in AIPLA Model Jury Instructions, March 2008, § 3.14].

GRANTED     _____

DENIED      _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 30**

**<u>SUMMARY OF INVALIDITY DEFENSE</u>**

The Defendants contend that the asserted claims of the '085 patent and the '852 patent are invalid.  The Defendants must prove by clear and convincing evidence that each claim is invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of the Plaintiff's asserted claims is invalid.

The Defendants contend that the asserted claims of the '085 patent are invalid for the following reasons:

(1)    anticipation in view of the prior art

(2)    obviousness in view of the prior art

(3)    lack of enablement

(4)    failure to provide a written description of the claimed invention

(5)    failure to particularly point out and distinctly claim the subject matter which patentee regards as his invention.

In addition, the Defendants contend that the asserted claims of the '852 patent are invalid for the following reasons:

(1)    anticipation in view of the prior art

(2)    obviousness in view of the prior art

(3)    lack of enablement

(4)    failure to provide a written description of the claimed invention

(5)    failure to disclose the best mode of practicing the claimed invention

(6)    failure to particularly point out and distinctly claim the subject matter which patentee regards as his invention.

The finding of only one of the foregoing reasons is sufficient to invalidate a claim.  I will now instruct you in more detail why the Defendants allege that the asserted claims are invalid.

AIPLA Model Jury Instructions, March 2008, § 4

36

GRANTED     _____

DENIED      _____

MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 31

## <u>PRIOR ART DEFINED</u>

Prior art includes any of the following items received into evidence during trial:

1.      any product that was known or used by others in the United States before the alleged patented invention was made;

2.      patents that issued more than one year before the filing date of the patent, or before the alleged invention was made;

3.      publications having a date more than one year before the filing date of the patent, or before the alleged invention was made;

4.      any product that was in public use or on sale in the United States more than one year before the patent was filed;

5.      any product that was made by anyone before the named inventor created the patented product where the product was not abandoned, suppressed, or concealed.


AIPLA Model Jury Instructions, March 2008, § 5


35 U.S.C. § 102 [as cited in AIPLA Model Jury Instructions, March 2008, § 5].


GRANTED      _____

DENIED      _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 32**

**INVENTION DATE**

You must determine the date of invention for each of the patents separately.  Invention constitutes both conception and diligent reduction to practice.  In this case, the filing date of each patent constitutes a constructive reduction to practice and date of invention unless you determine that every element of an asserted claim was fully disclosed in a prior related patent application in which case the date of that prior related patent application constitutes a constructive reduction to practice and date of invention.  To prove an earlier date, the Plaintiff must show that the inventor conceived of each and every element of the asserted claim and acted diligently to reduce the invention to practice.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

35 U.S.C. § 120; 35 U.S.C. § 112; *Cooper v. Goldfarb*, 154 F.3d 1321 (Fed. Cir. 1998); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997).

GRANTED   _____

DENIED   _____

MODIFIED   _____

## PROPOSED JURY INSTRUCTION NO. 33
### <u>ANTICIPATION</u>

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, the Defendants must prove with clear and convincing evidence that the claimed invention is not new.

In this case, the Defendants contend that the asserted claims of the '085 and '852 patents are anticipated.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior publication, patent, etc., you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular publication, patent, etc.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently resulted from its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed  It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.  When a claim element recites ranges covering several products, the claim term is anticipated if one product in that range is in the prior art.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that the Defendants contend apply in this case, any one of those, if established, is sufficient to qualify that activity or reference as prior art. I will now instruct you about those.

AIPLA Model Jury Instructions, March 2008, § 6.0

*Toro Co. v. Deere & Co.,* 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.,* 190 F.3d 1342, 1346-1347 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); [as cited in AIPLA Model Jury Instructions, March 2008, § 6.0].

*Sensormatic Elecs. Corp. v. The Tag Co.*, 2008 U.S. Dist. LEXIS 102690 at *20-21 (S.D. Fla. 2008).

GRANTED   _____

DENIED   _____

MODIFIED   _____

## PROPOSED JURY INSTRUCTION NO. 34

## <u>PRIOR PUBLIC KNOWLEDGE</u>

The Defendants contends that the asserted claims of the '085 and '852 patents are anticipated because the invention defined in that claim was publicly known by others in the United States before it was invented by the inventor(s).

A patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by [the patentee].

AIPLA Model Jury Instructions, March 2008, § 6.1

35 U.S.C. § 102(a); *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000); *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). [as cited in AIPLA Model Jury Instructions, March 2008, § 6.1]

GRANTED      _____

DENIED       _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 35

## <u>PRIOR PUBLIC USE</u>

The Defendants contend that the asserted claims of the '085 and '852 patent are anticipated because the invention defined in those claims was publicly used by others in the United States before it was invented by Ted Gower and was publicly used in the United States more than one year before Ted Gower filed his patent application.

A patent claim is invalid if the invention defined in that claim was publicly used by a person other than Ted Gower in the United States before it was invented by Ted Gower or was publicly used by anyone in the United States more than one year before the effective filing date of Ted Gower's patent application. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal is evidence of a public use. However, secret use by a third party is not public. If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.


AIPLA Model Jury Instructions, March 2008, § 6.2


35 U.S.C. § 102(a), (b); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 840 F.2d 902, 906 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 390-91 (Fed. Cir. 1984); *TP Lab., Inc. v. Prof'l Positioners, Inc.,* 724 F.2d 965, 970-72 (Fed. Cir. 1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); *In re Smith,* 714 F.2d 1127, 1134-37 (Fed. Cir. 1983). [as cited in AIPLA Model Jury Instructions, March 2008, § 6.2]


GRANTED        _____

DENIED         _____

MODIFIED       _____

## PROPOSED JURY INSTRUCTION NO. 36

## <u>ON SALE BAR</u>

The Defendants contend that the asserted claims of the '085 and '852 patents are anticipated because the invention defined in those claims was on sale in the United States more than one year before Ted Gower filed his U.S. patent application.

A patent claim is invalid if an embodiment of the claimed invention was both (1) subject to commercial offer for sale in the United States; and (2) ready for patenting more than one year before the patent application date.

An invention was "on sale" if the claimed invention was embodied in the thing sold or commercially offered for sale. It is not required that a sale was actually made. The essential question is whether or not there was an attempt to obtain commercial benefit from the invention.

In order to be on sale, the invention must have been ready for patenting at the time of the alleged offer for sale is made. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose.

AIPLA Model Jury Instructions, March 2008, § 6.3

35 U.S.C. § 102; *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-55 (Fed. Cir. 2002); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047-54 (Fed. Cir. 2001); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045-49 (Fed. Cir. 2001) [as cited in AIPLA Model Jury Instructions, March 2008, § 6.3].

GRANTED      _____

DENIED       _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 37**

**EXPERIMENTAL USE**

Certain activities are experimental if they are a legitimate effort to perfect the invention or to determine if the invention will work for its intended purpose.  So long as the primary purpose is experimentation, it does not matter that the public used the invention or that the inventor incidentally derived profit from it.  If you find that the Defendants have shown a prior public use, or prior sale by clear and convincing evidence, then the burden is on the Plaintiff to come forward with evidence showing that the purpose of the prior public use or prior sale was experimental.

Only experimentation by or under the control of the inventor of the patent or his assignee qualifies for this exception.  Experimentation by a third party, for its own purposes, does not. The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use, but a public use.

AIPLA Model Jury Instructions, March 2008, § 6.4

*City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 134-35 (1877); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353-55 (Fed. Cir. 2002); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1071-72 (Fed. Cir. 1992); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549-51 (Fed. Cir. 1990); *U.S. Envtl. Prods. Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990); *In re Hamilton*, 882 F.2d 1576, 1580-83 (Fed. Cir. 1989); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535-37 (Fed. Cir. 1984); *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580-81 (Fed. Cir. 1984); *TP Labs., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 972-73 (Fed. Cir.), *cert. denied,* 469 U.S. 826 (1984); *DL Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1149-50 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983); *In re Theis*, 610 F.2d 786, 792-93 (C.C.P.A. 1979) [as cited in AIPLA Model Jury Instructions, March 2008, § 6.4].

GRANTED     _____

DENIED       _____

MODIFIED   _____

**PROPOSED JURY INSTRUCTION NO. 38**

**PRINTED PUBLICATION**

The Defendants contend that the asserted claims of the '085 and '852 patents are anticipated because the invention defined in that claim was described in a printed publication more than one year before Ted Gower filed the U.S. patent application and before Ted Gower invented the invention.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patentee or more than one year prior to the filing date of the U.S. application.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, photocopies, etc. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time the inventions of the patents was made, and you may consider evidence that sheds light on the knowledge such a person would have had.

AIPLA Model Jury Instructions, March 2008, § 6.5

35 U.S.C. § 102; *In re Carol F. Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554-55 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1479 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-899 (Fed. Cir. 1986); *In re Donohue,* 766 F.2d 531, 533-34 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed. Cir. 1984); *In re Wyer,* 655 F.2d 221,

227 (C.C.P.A. 1981); *In re Donohue,* 632 F.2d 123, 125-126 (C.C.P.A. 1980); *In re Samour,* 571 F.2d 559, 562 (C.C.P.A. 1978); *In re Coker,* 463 F.2d 1344, 1348 (C.C.P.A. 1972); *Deep Welding, Inc. v. Sciaky Bros., Inc.,* 417 F.2d 1227, 1235 (7th Cir. 1969); *In re Foster,* 343 F.2d 980, 984-985 (C.C.P.A. 1965) [as cited in AIPLA Model Jury Instructions, March 2008, § 6.5].

GRANTED     _____

DENIED     _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 39

### __PRIOR INVENTION__

The Defendants contend that the asserted claims of the '085 and '852 patents are anticipated because the invention defined in those claims was invented by another person before Ted Gower invented his invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress, or conceal the invention.

The Defendants must show by clear and convincing evidence *either* that before the patentee invented his invention, a third party reduced to practice a product that included all of the elements of the asserted claim of the patents or that a third party was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, the Defendants must show that a third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

If the prior invention was abandoned, suppressed, or concealed, it does not anticipate the patent.  However, it is not necessary that the patentee had knowledge of that prior invention.

Generally, an invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose.  A period of delay does not constitute abandonment, suppression, or concealment if the prior inventor was engaged in reasonable efforts to bring the invention to market.


AIPLA Model Jury Instructions, March 2008, § 6.6

35 U.S.C. § 102; *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1361-63 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035-40 (Fed. Cir. 2001); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1436-37 (Fed. Cir.1988); *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1444-46 (Fed. Cir. 1984) [as cited in AIPLA Model Jury Instructions, March 2008, § 6.6].

GRANTED      _____

DENIED        _____

MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 40

### <u>PRIOR PATENT</u>

The Defendants contend that the asserted claims of the '085 and '852 patents are anticipated because the invention defined in those claims was patented by a third party before it was invented by Ted Gower or more than one year before Ted Gower filed his United States patent application.

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country before it was invented by the patentee or more than one year before the patentee filed his United States patent application.

AIPLA Model Jury Instructions, March 2008, § 6.7

35 U.S.C. § 102; *In re Monks,* 588 F.2d 308, 309 (C.C.P.A. 1978); *In re Fuge,* 272 F.2d 954, 956 (C.C.P.A. 1959); *In re Ekenstam,* 256 F.2d 321, 323-24 (C.C.P.A. 1958); *Bendix Corp. v. Balax, Inc.,* 421 F.2d 809, 811-12 (7th Cir. 1970) [as cited in AIPLA Model Jury Instructions, March 2008, § 6.7].

GRANTED       _____

DENIED         _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 41**

**<u>PRIOR U.S. APPLICATION</u>**

The Defendants contend that the asserted claims of the '085 and '852 patents are anticipated because the invention defined in those claims was described in one or more United States patents, and because the application for the prior art patent was filed before Ted Gower made his invention.

A claim of the '085 or '852 patent would be invalid if the invention defined by that claim was described in a United States patent issued on a patent application filed by another person before the invention was made by Ted Gower.

To show anticipation of the patented invention, the Defendants must show by clear and convincing evidence that the application for the prior art patent described each and every element of an asserted claim of the '085 or '852 patent and that the specification, claims, and/or drawings of the application for the prior art patent was filed before the date of invention of the '085 or '852 patent.

AIPLA Model Jury Instructions, March 2008, § 6.8

35 U.S.C. § 102(e); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 983-84 (Fed. Cir. 1989); *In re Wertheim*, 646 F.2d 527, 536-37 (C.C.P.A. 1981) [as cited in AIPLA Model Jury Instructions, March 2008, § 6.8].

GRANTED     _____

DENIED      _____

MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 42

### <u>OBVIOUSNESS – GENERALLY</u>

The Defendants contend that claim 10 of the '085 and claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent are invalid because the claimed invention is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.  If a single prior art reference does not disclose, either expressly or inherently, every recited element, obviousness may be shown by combining disclosed features from more than one item of prior art.

The following factors must be evaluated to determine whether the Defendants have established that the claimed inventions are obvious:

1. the scope and content of the prior art relied upon by the Defendants;

2. the difference or differences, if any, between each claim of the patent that the Defendants contend is obvious and the prior art;

3. the level of ordinary skill in the art at the time the invention of the patent was made; and

4. additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

The Defendant must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

AIPLA Model Jury Instructions, March 2008, § 7.0

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1740-41 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.,* 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All*

*Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 7.0].

GRANTED   _____

DENIED   _____

MODIFIED   _____

## PROPOSED JURY INSTRUCTION NO. 43
## <u>SCOPE AND CONTENT OF THE PRIOR ART</u>

You must determine what constitutes prior art that may be considered in determining whether claim 10 of the '085 patent or claims 1, 2, 3, 4, 6, 8 and 9 of the '852 patent are obvious. A prior art reference may be considered if it discloses information designed to solve the same problem(s) faced by the inventor(s) or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problem(s) faced by the inventor(s).

AIPLA Model Jury Instructions, March 2008, § 7.1

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979) [as cited in AIPLA Model Jury Instructions, March 2008, § 7.1].

GRANTED        _____

DENIED          _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 44

## <u>DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART</u>

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that the Defendants contend is obvious.

AIPLA Model Jury Instructions, March 2008, § 7.2


*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567-68 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 7.2].


GRANTED      _____

DENIED        _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 45**

**LEVEL OF ORDINARY SKILL**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the art of hurricane protection.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

- the types of problems encountered in the art at the time of the invention; and

- the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

AIPLA Model Jury Instructions, March 2008, § 7.3

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 7.3].

GRANTED    _____

DENIED     _____

MODIFIED   _____

## PROPOSED JURY INSTRUCTION NO. 46
## <u>ADDITIONAL FACTORS</u>

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would or would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

1.  Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.  Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.  Did others try, but fail, to solve the problem solved by the claimed invention?

4.  Did others copy the claimed invention?

5.  Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.  Did others in the field, or [the Defendant] praise the claimed invention or express surprise at the making of the claimed invention?

7.  Did others accept licenses under patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.  These factors have no bearing on a determination of whether a claim is or is not anticipated by the prior art.


AIPLA Model Jury Instructions, March 2008, § 7.4


*Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *United States v. Adams,* 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions,

March 2008, § 7.4].

GRANTED        _____

DENIED         _____

MODIFIED       _____

## PROPOSED JURY INSTRUCTION NO. 47
### ENABLEMENT

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation. In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. The defendants bear the burden of establishing lack of enablement by clear and convincing evidence.

Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art and (8) the breadth of the claims.

AIPLA Model Jury Instructions, March 2008, § 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel Corp. v. Osram Sylvania Inc.,* 256 F.3d 1298, 1306 (Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer- Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362,

1371 (Fed. Cir. 1999); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir.), *cert. denied*, 484 U.S. 954 (1987); *Hybritech Inc. v. Monolonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 (1987); *Ralston Purina Co. v. Far-Mar Co.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985); *Lindmann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1463 (Fed. Cir. 1984); *White Consolidated Indus., Inc. v. Vega Servo Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 8].

GRANTED     _____

DENIED      _____

MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 48
## WRITTEN DESCRIPTION REQUIREMENT

A patent must contain a written description of the product claimed in the patent. The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent. Enough detail must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention.

The Defendants contend that the claims of the '085 patent and the '852 patent are invalid for failure to satisfy the written description requirement. The Defendants bear the burden of establishing lack of written description by clear and convincing evidence.

If you find that the Defendants have proved that it is highly probable that the patents do not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

AIPLA Model Jury Instructions, March 2008, § 9

35 U.S.C. § 112; *Falko-Gunter Faulkner v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006); *Univ. of Rochester v. G.D. Searle & Co.*, Inc., 358 F.3d 916, 922-928 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002) (en banc); *Turbocare Div. of Demag Delaval Turbomachinery Corp., v. General Elect. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323-24 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1566-67 (Fed. Cir. 1997); *Vas-Cath., Inc. v. Mahurkar*, 935 F.2d 1555, 1565-66 (Fed. Cir. 1991); *In re Ruschig*, 379 F. 2d 990, 995 (C.C.P.A. 1967) [as cited in AIPLA Model Jury Instructions, March 2008, § 9].

GRANTED   _____

DENIED     _____

MODIFIED  _____

## PROPOSED JURY INSTRUCTION NO. 49
### <u>BEST MODE</u>

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure on how to practice the invention claimed in the patent. The inventor must disclose the best mode he or she knew at the time of filing for carrying out the invention as described in the claims. If an inventor knows of a best way or mode of making and using the claimed invention at the time the patent application was filed, then the written description must contain a description of that mode.

The Defendants have asserted that the Plaintiff's patents are invalid for failure to satisfy the best mode requirement. The Defendants bear the burden of establishing failure to satisfy the best mode requirement by clear and convincing evidence.

To determine whether the inventor complied with the best mode requirements, two questions must be answered:

1.      At the time the patent application was filed, did the Plaintiff consider a particular mode for practicing his invention superior to all other modes?

2.      If so, did the Plaintiff adequately disclose the superior mode in the patent?

The first prong of the best mode inquiry focuses on the state of mind of the particular inventor and the knowledge he possessed at the time the application was filed. The first question is subjective.

For instance, a selection made for commercial expediency (such as the availability of certain materials, prior relationships with certain suppliers, and other routine manufacturing choices) may be the "best" decision in a manufacturing circumstance but may have been chosen by someone other than the inventor or may not be considered by the inventor to be the best mode of carrying out the invention. If the inventor contemplated a best mode before he filed the patent application and left it out of the application, an amendment after the filing will not cure an original omission of the best mode disclosure.

The one exception to the best mode requirement is that an inventor need not set forth "routine details" that would be apparent to one skilled in the art.

If the answer to the first question is "yes," the second question of the analysis should be addressed. The second question, an objective inquiry, focuses on the scope of the patented

invention and the level of skill in the field of the invention.  The disclosure in the specification must be adequate to allow one of ordinary skill in the art to make and use the best mode of the invention.  Those skilled in the field of the invention should not have to look to the commercial embodiment in order to practice the best mode.

AIPLA Model Jury Instructions, March 2008, § 10

35 U.S.C. § 112, ¶1; *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1314-1319 (Fed. Cir. 2002); *Mentor H/S, Inc., v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001); *Eli Lilly and Co. v. Barr Labs., Inc.,* 251 F.3d 955, 963 (Fed. Cir. 2001); *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.,* 215 F.3d 1281, 1286 (Fed. Cir. 2000); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563, 1581 (Fed. Cir. 1996); *U.S. Gypsum Co. v. Nat'l Gypsum Co.,* 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 558 (Fed. Cir. 1994); *Shearing v. Iolab Corp.,* 975 F.2d 1541, 1545-46 (Fed. Cir. 1992); *Wahl Instruments, Inc. v. Acvious, Inc.,* 950 F.2d 1575, 1581 (Fed. Cir. 1991); *Amgen, Inc. v. Chugai Pharm. Co., Ltd.,* 927 F.2d 1200, 1209-10 (Fed. Cir. 1991); *Chemcast Corp. v. Arco Indus. Corp.,* 913 F.2d 923, 927-28 (Fed. Cir. 1990); *Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1535-36 (Fed. Cir. 1987); *DeGeorge v. Bernier,* 768 F.2d 1318, 1324-25 (Fed. Cir. 1985); *Application of Gay,* 309 F.2d 769, 772 (C.C.P.A. 1962) [as cited in AIPLA Model Jury Instructions, March 2008, § 10]

*Glaxo Inc. v. Novopharm Ltd.,* 52 F.3d 1043, 1049 (Fed. Cir. 1995); *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 558 (Fed. Cir. 1994); *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1531-32 (Fed. Cir.1991); *Dana Corp. v. IPC Ltd. Partnership, 860* F.2d 415, 418-19 (Fed. Cir. 1988); *In re Bundy,* 642 F.2d 430, 435 (C.C.P.A. 1981); *In re Sherwood,* 613 F.2d 809 (C.C.P.A. 1980); *In re Hay,* 534 F.2d 917 (C.C.P.A. 1976) [as cited in AIPLA Model Jury Instructions, March 2008, § 10].

GRANTED        _____

DENIED          _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 50

## <u>INEQUITABLE CONDUCT – GENERALLY</u>

The Defendants contend that the Plaintiff may not enforce the '852 patent against the Defendants because the Plaintiff engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the '852 patent.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

The Defendants must prove inequitable conduct by clear and convincing evidence. To determine whether the '852 patent was obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

AIPLA Model Jury Instructions, March 2008, § 11.0

*Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363-64 (Fed. Cir. 2007); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997) [as cited in AIPLA Model Jury Instructions, March 2008, § 11.0].

GRANTED        _____

DENIED         _____

MODIFIED       _____

**PROPOSED JURY INSTRUCTION NO. 51**

**MATERIALITY**

If you find that a person with the duty of good faith and candor withheld or submitted false information when applying for the '852 patent, you must determine whether that information was material information.

Information is material if it establishes, either alone or in combination with other information that a claim of the patent application would more likely than not meet one of the requirements for a patent. Information is also material if it refutes or is inconsistent with the information provided to the Patent and Trademark Office or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection. Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

AIPLA Model Jury Instructions, March 2008, § 11.1

37 C.F.R. § 1.56(b); *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1129 n. 6 (Fed. Cir. 2006); *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314-16 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1364 (Fed. Cir. 2003); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1320 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 n.3 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997) [as cited in AIPLA Model Jury Instructions, March 2008, § 11.1]

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 52**

**INTENT TO DECEIVE OR MISLEAD**

If you determine that material information was withheld from or falsely submitted to the Patent and Trademark Office, you must next determine whether this was done with an intent to deceive or mislead the Patent and Trademark Office. Intent to deceive the Patent and Trademark Office may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.

When a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be that to deceive the Patent and Trademark Office, an inference that the patentee intended to deceive may be appropriate.

In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

AIPLA Model Jury Instructions, March 2008, § 11.2

*Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F. 3d 1359, 1364 (Fed. Cir. 2007); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1137-38 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F. 3d 1123, 1133-34 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239-40 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319-20 (Fed. Cir. 2000); *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1374-76 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-57 (Fed. Cir. 1997); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180-82 (Fed. Cir. 1995); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992) [as cited in AIPLA Model Jury Instructions, March 2008, § 11.2].

GRANTED   _____

DENIED    _____

MODIFIED  _____

## PROPOSED JURY INSTRUCTION NO. 53
## BALANCING OF MATERIALITY AND INTENT

If the Defendants have proven by clear and convincing evidence that information was withheld or falsely submitted by a person with the duty of good faith and candor, you must then balance the degree of materiality and the degree of intent to deceive or mislead the Patent and Trademark Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '852 patent. Where the materiality of the withheld or false information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

AIPLA Model Jury Instructions, March 2008, § 11.3

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F. 3d 1359, 1364 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F. 3d 1123, 1133-35 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239-41 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) [as cited in AIPLA Model Jury Instructions, March 2008, § 11.3].

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 54**

**<u>DAMAGES – GENERALLY</u>**

If you find that the accused devices infringe any of the asserted claims of the '085 patent or the '852 patent, and that those claims are not invalid, you must determine the amount of damages to be awarded the Plaintiff for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid, unenforceable, or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate the Plaintiff for the infringement.  Your damage award should put the Plaintiff in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You may not, however, add anything to the amount of damages to punish the accused infringers or to set an example.

The Plaintiff must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of the Plaintiff.


AIPLA Model Jury Instructions, March 2008, § 12.0


35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987) [as cited in AIPLA Model

Jury Instructions, March 2008, § 12.0].


GRANTED       _____

DENIED        _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 55**

**LIMITATION ON DAMAGES - NO MULTIPLE RECOVERY**

Defendants are charged in this case with the allegedly infringing manufacture and sale of its products.  If you find that Defendants have both manufactured and sold an infringing product, then you may only award single appropriate damages as to that product.  You may not award duplicate damages for the separate acts of manufacture and sales for the same unit.

If you find that Defendants have directly infringed the asserted patents as to an infringing product, and you also find that Defendants have induced or contributed to the infringement of the asserted patents as to the same product, then you may only award single appropriate damages as to that product.  You may not award duplicate damages for the same product.

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000 (Fed. Cir. 2006).

GRANTED      _____

DENIED        _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 56
### DATE DAMAGES BEGIN

Damages for infringement of the '085 patent may be calculated no earlier than the date of issuance of the patent, which is December 4, 2001.  However, if you determine that the Plaintiff sells a product that includes the invention claimed in the '085 patent but has not marked that product with the patent number, you must also determine the date that the Defendants received actual written notice of the '085 patent and the specific product alleged to infringe.  Calculation of damages attributable to the '085 patent would then commence on this later date.  On the other hand, if you determine that the Plaintiff sells and marks a product that includes the invention claimed in the '085 patent, or the Plaintiff does not sell a product covered by the '085 patent, then damages should be calculated as of the date you determine that the infringement began.

Damages for infringement of the '852 patent may be calculated no earlier than the date of issuance of the patent, which is March 15, 2005.  However, if you determine that the Plaintiff sells a product that includes the invention claimed in the '852 patent but has not marked that product with the patent number, you must also determine the date that the Defendants received actual written notice of the '852 patent and the specific product alleged to infringe.  Calculation of damages attributable to the '852 patent would then commence on this later date.  On the other hand, if you determine that the Plaintiff sells and marks a product that includes the invention claimed in the '852 patent, or the Plaintiff does not sell a product covered by the '852 patent, then damages should be calculated as of the date you determine that the infringement began.

Model Patent Jury Instructions for the Northern District of California, October 9, 2007, § B.5.8

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) [as cited in Model Patent Jury Instructions for the Northern District of California, October 9, 2007, § B.5.8].

GRANTED     _____

DENIED      _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 57**

**PATENT MARKING AND NOTICE**

The Plaintiff bears the burden of pleading and proving compliance with either the marking requirements or the specific notice requirement of 35 U.S.C. § 287 to recover damages for patent infringement occurring before filing of the present lawsuit.  To establish a marking is sufficient under 35 U.S.C. § 287 the Plaiintiff must show that a marking including the word "Patent" or the abbreviation "Pat." together with the patent number of the patent-in-suit, was fixed to the patented article in a legible fashion.   Further, for the Plaintiff to establish constructive notice under 35 U.S.C. § 287, the Plaintiff must show that substantially all of its goods distributed and covered by the patents-in-suit were marked in accordance with the statute, and that once marking began, it was substantially consistent and continuous.  In lieu of marking the patented article, the Plaintiff must establish that actual notice was provided to the Defendants of a specifi charge of infringement of the patents-in-suit by the specific accused products.

35 U.S.C. § 287; *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1115 (1997); *MacPike v. American Honda Motor Co. Inc.*, 29 U.S.P.Q.2d 1526 (N.D. Fla. 1993); *Donald S. Chisum*, 7 Chisum on Patents, § 20.03[7][c]; *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994).

GRANTED      _____

DENIED       _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 58**

**TWO TYPES OF DAMAGES – LOST PROFITS AND REASONABLE ROYALTY**

There are two types of damages for patent infringement. The first type of patent damages is lost profits.

Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.

The second type of patent damages is called reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover for infringement.

AIPLA Model Jury Instructions, March 2008, § 12.2

GRANTED       _____

DENIED         _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 59**

**LOST PROFITS – "BUT-FOR" TEST**

The Plaintiff is seeking its lost profits as his patent damages.

The Plaintiff must prove the amount of his lost profits. To recover lost profits for some or all of the infringing sales, the Plaintiff must show by a preponderance of evidence that, but for the infringement, the Plaintiff would have made profits. The lost profits may be profits that would have resulted from Plaintiff's sales or a portion of them that Defendants made of the alleged infringing products. Thus, part of your job is to determine what the customers who purchased the alleged infringing products from Defendants would have done if the alleged infringement had not occurred. The profits I have been referring to are the profits allegedly lost by the Plaintiff, not the profits, if any, made by Defendants.

AIPLA Model Jury Instructions, March 2008, § 12.3

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Micro Chem. v. Lextron, Inc.*, 318 F.3d 1119, 1122-1125 (Fed. Cir. 2003); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988); *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.* 745 F.2d 11, 21 (Fed. Cir. 1984); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1365 (Fed. Cir. 1984); *Central Soya Co. v. Geo A Hormel & Co.,* 723 F.2d 1573, 1578-79 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.3].

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 60**

**LOST PROFITS – PANDUIT FACTORS**

You may infer that the Plaintiff has proven its lost profits if you find that the Plaintiff has proven each of the following factors by a preponderance of the evidence:

1.      the demand for the patented product,

2.      absence of acceptable non-infringing substitutes,

3.      that the Plaintiff had the manufacturing and marketing capacity to make the infringing sales actually made by Defendants, and

4.      the amount of profit that the Plaintiff would have made but for Defendants' sales.

I will now explain each of these factors.

AIPLA Model Jury Instructions, March 2008, § 12.4

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 275 (Fed. Cir. 1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.4].

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 61**

**LOST PROFITS – PANDUIT FACTORS – DEMAND FOR THE PATENTED PRODUCT**

Demand for the patented product can be proven by significant sales of the Plaintiff's patented product.

The demand for the patented product can also be proven by significant sales of Defendants' product containing the patented features.  However, if you find that Defendants product was purchased because of features other than those claimed by the Plaintiff, the sales of Defendants' product cannot establish a demand for the patented product.

AIPLA Model Jury Instructions, March 2008, § 12.5

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993);
*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991);
*Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984) [as cited in
AIPLA Model Jury Instructions, March 2008, § 12.5].

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 62**

**LOST PROFITS – PANDUIT FACTORS –**

**ACCEPTABLE NON-INFRINGING SUBSTITUTES**

In order to be an acceptable substitute, the product must have one or more of the advantages of the patented invention that were important to customers.  If, however, the realities of the marketplace are that competitors other than the Plaintiff would likely have captured some or all of the sales made by the infringer, even despite a difference in the products, then the Plaintiff is not entitled to lost profits on those sales.

An acceptable non-infringing substitute must be a product that does not infringe the patent.  A product does not infringe a patent when it either (a) is sold based on a license under that patent or (b) does not include all the features required by the patent.  An acceptable non-infringing substitute is available if, during the damages period, a competitor or Defendant had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing sales at the time those infringing sales were made.

If you determine that consumers would just as likely have purchased a non-infringing acceptable product, then the Plaintiff has not shown it lost that sale but for Defendants' sales.

AIPLA Model Jury Instructions, March 2008, § 12.6

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.,* 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901-902 (Fed. Cir. 1986) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.6].

GRANTED         _____

DENIED          _____

MODIFIED        _____

## PROPOSED JURY INSTRUCTION NO. 63
## LOST PROFITS – PANDUIT FACTORS – CAPACITY

The Plaintiff is only entitled to lost profits for sales it could have actually made. You should consider whether the Plaintiff has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. The Plaintiff must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement. The Plaintiff also must prove that it had the capability to market and sell the additional patented products.

AIPLA Model Jury Instructions, March 2008, § 12.7

*Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554 (Fed. Cir. 1984) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.7].

GRANTED         _____

DENIED          _____

MODIFIED        _____

## PROPOSED JURY INSTRUCTION NO. 64

## LOST PROFITS – PANDUIT FACTORS –
## AMOUNT OF PROFIT INCREMENTAL INCOME APPROACH

The Plaintiff may calculate its lost profits on lost sales by computing the lost revenue for its patented product and subtracting from that figure the amount of additional costs or expenses that it would have incurred in making those lost sales, including but not limited to cost of goods, sales costs, packaging, shipping, etc.

Certain fixed costs such as taxes, insurance, rent and administrative overhead may not vary with increases in production or scale. These are called fixed costs. Any costs, which do not vary with increased production or scale, should not be subtracted from the lost revenue when determining damages. Thus, in determining the Plaintiff's lost profits, you are not to subtract from its lost revenue the amount of any fixed costs.

The amount of lost profits cannot be speculative.


AIPLA Model Jury Instructions, March 2008, § 12.8


*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-1483 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-1580 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King Instrument Corp. v. Otari,* 767 F.2d 853, 863-864 (Fed. Cir. 1985); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 554-555 (Fed. Cir. 1984); *Paper Converting Mach. Co. v. Magna-Graphics Corp.,* 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.8].


GRANTED     _____

DENIED      _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 65**

**LOST PROFITS – MARKET SHARE**

It is not necessary for the Plaintiff to prove that the Plaintiff and the Defendants were the only two suppliers in the market for the Plaintiff to demonstrate entitlement to lost profits. If the realities of the marketplace are such that "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by Defendants, then the Plaintiff may be entitled to lost profits on a portion of the infringing sales.

The burden is on the Plaintiff, however, to show to a reasonable probability that it would have sold that portion if Defendants' product had never existed. By the same token, even if you find that the Plaintiff and Defendants were the only two suppliers of products having the advantages of the patented product, it does not necessarily mean that the Plaintiff would have made all of Defendants' sales. In fact, the relevant market also includes other devices or substitutes similar to the patented invention.

The burden is on the Plaintiff to show that its product competed in the same market with the Defendants' product and that it would have made those sales if the infringement had not occurred.

AIPLA Model Jury Instructions, March 2008, § 12.9

*Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577-78 (Fed. Cir. 1989) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.9].

GRANTED       _____

DENIED        _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 66
### LOST PROFITS – PRICE EROSION

The Plaintiff is entitled to recover additional damages if it can show to a reasonable probability that, if there had been no infringement, the Plaintiff would have been able to charge higher prices for its patented products.  In that case, you may also award as additional damages the amount represented by the difference between the amount of profits that the Plaintiff would have made by selling its product at the higher price and the amount of profits the Plaintiff actually made by selling its product at the lower price that the Plaintiff actually charged for its patented product.  This type of damage is referred to as price erosion damage. If you find that the Plaintiff suffered price erosion damages, you may also use the higher price in determining the Plaintiff's lost profits from sales lost because of the infringement.  In calculating the Plaintiff's total losses from price erosion, you must take into account any decrease in sales that might have occurred if the Plaintiff charged a higher price than it did.  This is called price elasticity.


AIPLA Model Jury Instructions, March 2008, § 12.10


*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378-1379 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minn. Mining & Mfg. Co.  v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578-1579 (Fed. Cir. 1992); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.10].


GRANTED      _____

DENIED        _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 67**

**REASONABLE ROYALTY – GENERALLY**

If you find that the Plaintiff has not proven its claim for lost profits, or if you find that the Plaintiff has proven its claim for lost profits for only a portion of the infringing sales, you must then determine what a reasonable royalty would be for that portion of the Plaintiff's sales for which you have not awarded lost profit damages. The patent law specifically provides that the amount of damages that Defendants must pay the Plaintiff for infringing the Plaintiff's patent may not be less than a reasonable royalty for the use that Defendants made of the Plaintiff's invention. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. The Plaintiff is entitled to a reasonable royalty for all infringing sales for which it is not entitled to lost profits damages.

AIPLA Model Jury Instructions, March 2008, § 12.14

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.14].

GRANTED         _____

DENIED           _____

MODIFIED        _____

## PROPOSED JURY INSTRUCTION NO. 68
## <u>REASONABLE ROYALTY – DEFINITION</u>

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of the Defendants taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

AIPLA Model Jury Instructions, March 2008, § 12.15

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.15].

GRANTED      _____

DENIED       _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 69**

**REASONABLE ROYALTY – RELEVANT FACTORS**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.     Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.     The rates paid by the Defendants to license other patents comparable to the patent.

3.     The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.     The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.     The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.     The duration of the patents and the term of the license.

8.     The established profitability of the product made under the patents; its commercial success; and its current popularity.

9.     The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.    The extent to which the Defendants have made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.


AIPLA Model Jury Instructions, March 2008, § 12.16


*Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.16].

GRANTED      _____

DENIED       _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 70

### <u>REASONABLE ROYALTY – TIMING</u>

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Defendants after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  You may only consider this information, however, if it was foreseeable at the time that the infringement began.

AIPLA Model Jury Instructions, March 2008, § 12.17

*Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-48 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir 2004); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988) [as cited in AIPLA Model Jury Instructions, March 2008, § 12.17].

GRANTED        _____

DENIED          _____

MODIFIED       _____

## PROPOSED JURY INSTRUCTION NO. 71

## <u>WILLFUL INFRINGEMENT</u>

If you find by a preponderance of the evidence that the Defendants infringed the '085 patent or the '852 patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.      The Defendants were aware of the Plaintiff's patent,

2.      The Defendants acted despite an objectively high likelihood that its actions infringed a valid patent, and

3.      This objectively high likelihood of infringement was either known or so obvious that it should have been known to the Defendants.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether the Defendants intentionally copied the claimed invention or a product covered by the Plaintiff's patent, whether the Defendants relied on competent legal advice, and whether the Defendants presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

AIPLA Model Jury Instructions, March 2008, § 13

*In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc) [as cited in AIPLA Model Jury Instructions, March 2008, § 13].

GRANTED      _____

DENIED      _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO.  72**

**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY**

In this case the Armor Screen claims that the Defendants committed acts constituting tortious or unlawful interference with business relationship existing between the Armor Screen and certain Hurricane Protection Dealers.

In order to recover on this claim, Armor Screen must prove each of the following facts by a preponderance of the evidence:

(1)  That Armor Screen had a business relationship with certain Hurricane Protection Dealers;

(2)  That the Defendants knew about the Armor Screen's relationship with certain Hurricane Protection Dealers;

(3)  That the Defendants intentionally and unjustifiably interfered this relationship; and

(4)  That the Armor Screen suffered injury or damage in its business as a proximate result of the Defendants' wrongful acts.

*Dwight v. Tobin*, 947 F.2d 455, 460 (11th Cir. 1991); *Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980);  *Johnson Enters. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998);*Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1353 n. 12 (S.D. Fla. 1999); *Ethan Allen, Inc. v. Georgetown Manor*, 647 So.2d 812 (Fla. 1994); *International Sales and Service, Inc. v. Aural Insulated Products, Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001); *Manufacturing Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982); *Telephone Operating Sys. v. Peoples Tel. Co.*, 831 F. Supp. 840 (S.D. Fla. 1993);

GRANTED        _____

DENIED          _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 73

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY
#### Establishing the Existence of a Business Relationship

In deciding whether Armor Screen may recover for tortious interference, the first question you must decide is whether Armor Screen had a relationship with the Hurricane Protection Dealers.  To establish the existence of a business relationship there must have been an actual and identifiable understanding or agreement between Armor Screen and the Hurricane Protection Dealers.  The mere possibility of that the Hurricane Protection Dealers might conduct future business with Armor Screen is not sufficient, by itself, to give rise to an existing business relationship.  In order to find that a business relationship existed, you must find that there was an understanding or agreement between Armor Screen and the Hurricane Protection Dealers that would have been completed had it not been for the Defendants' actions.  If you find that no business relationship existed, then your verdict should be for the Defendants.

*Dwight v. Tobin*, 947 F.2d 455, 460 (11th Cir. 1991); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1353 n. 12 (S.D. Fla. 1999); *Ethan Allen, Inc. v. Georgetown Manor*, 647 So.2d 812 (Fla. 1994); *International Sales and Service, Inc. v. Aural Insulated Products, Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001); *Advanced Protection Technologies, Inc. v. Square D. Company,* 390 F.Supp. 2d 1155, 1163-64 (M.D. Fla. 2005)

GRANTED    _____

DENIED     _____

MODIFIED   _____

**PROPOSED JURY INSTRUCTION NO. 74**

**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY**

**Establishing Defendants' Knowledge**

Next, you must decide whether Defendants knew of the business relationship between Plaintiff and the Armor Screen dealers.  If you find that Defendants did not know of such a business relationship, then your verdict should be for Defendants.

*Dwight v. Tobin*, 947 F.2d 455, 460 (11th Cir. 1991);

GRANTED       _____

DENIED        _____

MODIFIED      _____

## PROPOSED JURY INSTRUCTION NO. 75

## <u>TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY</u>

### Intentional Interference

Next, you must determine whether Defendants intentionally and unjustifiably interfered with this relationship.  In order to find that the Defendants "interfered" you must find that they influenced, induced, or coerced the Hurricane Protection Dealers to breach an agreement with the Plaintiff.  You must also find that this interference was intentional and unjustifiable. Interference is intentional if the person interfering desires to interfere or knows that the interference is substantially certain to occur as a result of their action.  If you find that Defendants did not interfere or that Defendants interfered but did not do so intentionally, then your verdict should be for Defendants.

*Dwight v. Tobin*, 947 F.2d 455, 460 (11th Cir. 1991); *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999)

GRANTED        _____

DENIED           _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 76**

**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY**

**Damage/Injury**

If you find that Defendants intentionally interfered with a business relationship shared by Armor Screen with the Hurricane Protection Dealers, then you must decide is whether Defendants' interference was the cause of the Hurricane Protection Dealers decision to stop purchasing goods from Armor Screen  You must find that the Defendants' interference was a direct, cause of loss or damage; in other words, you must find that the loss or damage would not have occurred but for the Defendants' interference.    If Armor Screen has not proven that Defendants interference caused it to lose the Hurricane Protection Dealers's business, you should find for the Defendants. You must also determine whether the interference caused monetary damage to the Plaintiff.  If your answer to this question is no, then your verdict should be for Defendants.

*Dwight v. Tobin*, 947 F.2d 455, 460 (11th Cir. 1991); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1353 n. 12 (S.D. Fla. 1999); *Ethan Allen, Inc. v. Georgetown Manor*, 647 So.2d 812 (Fla. 1994); *International Sales and Service, Inc. v. Aural Insulated Products, Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001); *Manufacturing Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982); *Telephone Operating Sys. v. Peoples Tel. Co.*, 831 F. Supp. 840 (S.D. Fla. 1993);

GRANTED      _____

DENIED        _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 77**

**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY**

**Competitor's Privilege**

On the other hand, if you find that the Plaintiff has proven all four elements discussed above then you must decide whether the Defendants have proven that their actions were privileged.

Keep in mind that the law recognizes the right of competitors to compete for customers. In our free enterprise system, it is not unlawful or improper, standing alone, for someone to compete for business. This is true regardless of how much the loss of the business relationship may inconvenience one party. The mere fact that someone's activity has injured another in business does not mean that the latter may recover because, in a free enterprise system, a businessperson has no legal complaint concerning a loss resulting from lawful competition. The theory of the tort or wrong of interference is that the law draws a line between lawful competition and vindictive destruction of someone else's business.

Florida law recognizes a competitor's privilege to compete for customers. The Defendants' actions were privileged if (1) the business relationship between Plaintiff and the Armor Screen dealers concerned a matter in which the Defendants was a competitor; (2) the Defendant did not employ improper means; (3) the Defendants did not intend to create or continue an illegal restraint of competition; and (4) the Defendants' purpose was at least in part to advance their interest in competing with Plaintiff.

"Improper means" means that one uses defamation, bribery, physical violence, misrepresentations, unfounded threats or intimidation, or other wrongful conduct to interfere.  A person who interferes with another's business relations using reasonable and ordinary methods does not interfere by an improper method.

If you find that Armor Screen has proven that Defendants tortiously interfered with its business relationship; but find that the Defendants actions were privileged or justified, then your verdict will be for the Defendants.

Wackenhut Corp. v. *Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980);  *Johnson Enters. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998); *International Sales and Service, Inc.*,

262 F.3d at 1159 (citing restatement (Second) of Torts § 768(1) (1977));*Heavener, Ogier Servs., Inc. v. R.W. Florida Region, Inc.*, 418 So. 2d 1074, 1076 (Fla. 5th DCA 1982).

GRANTED      _____

DENIED       _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 78

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY

#### Terminable-At-Will Privilege

Florida courts also recognize a privilege of fair competition when a contract is terminable at will.  This privilege is not lost simply because Defendants acts out of spite or malice, provided there is a legitimate competitive economic interest.  Therefore, even if you find that Defendants tortiously interfered Armor Screen's business relationship; you should find for the Defendants if you find that the underlying contract between Armor Screen and the Hurricane Protection Dealers was terminable at will and that Defendants had a legitimate competitive economic interest in interfering.

*Adler Consulting Corp. v. Executive Life Insurance*, Co., 483 So. 2d 501 (Fla. 3d DCA 1986);*Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980);*Heavener, Ogier Servs., Inc. v. R.W. Florida Region, Inc*., 418 So. 2d 1074, 1076 (Fla. 5th DCA 1982); *Greenberg v. Mount Sinai Medical Ctr.*, 629 So. 2d 252 (Fla. 3d DCA 1993)

GRANTED        _____

DENIED         _____

MODIFIED       _____

**PROPOSED JURY INSTRUCTION NO.79**

<u>**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP GENERALLY**</u>

**Damages**

On the other, hand if you find that the Defendants actions were not privileged then you will need to determine the amount of monetary damages to be awarded. In that respect you should award Armor Screen an amount of money shown by a preponderance of the evidence to be fair and adequate compensation for the loss or damage that proximately resulted from Defendants tortious interference**.** For damage to be the proximate result of such interference, it must be shown that, except for the tortious interference**,** such damage would not have occurred.

In considering the issue of the Plaintiff's damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the Defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

You are also instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages--that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find from a preponderance of the evidence that the Plaintiff failed to seek out or take advantage of a business or employment opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of the Plaintiff's damages by the amount that reasonably could have been realized if the Plaintiff had taken advantage of such opportunity.

*International Sales and Service, Inc. v. Aural Insulated Products, Inc.,* 262 F.3d 1152, 1159 (11th Cir. 2001); *Dwight v. Tobin,* 947 F.2d 455, 460 (11th Cir. 1991); *Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980);  *Johnson Enters. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998);*Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1353 n. 12 (S.D. Fla. 1999); *Ethan Allen, Inc. v. Georgetown Manor,* 647 So.2d 812 (Fla. 1994); *Manufacturing Research Corp. v. Greenlee Tool Co.,* 693 F.2d 1037, 1040

(11th Cir. 1982); *Telephone Operating Sys. v. Peoples Tel. Co.,* 831 F. Supp. 840 (S.D. Fla. 1993).


GRANTED     _____

DENIED      _____

MODIFIED    _____

## PROPOSED JURY INSTRUCTION NO. 80

## FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT
## (GENERALLY)

The Plaintiff contends that the Defendants violated Florida's Deceptive and Unfair Trade Practices Act. To recover damages, Armor Screen must show by the greater weight of the evidence that the Defendants engaged in unfair methods of competition and/or deceptive acts or practices.

In order to recover on this claim, you must find that the Armor Screen has proven each of the following facts by a preponderance of the evidence:

First: That the Defendants (a) expressly or impliedly represented that the installed Storm Catcher System was the Armor Screen System and/or (b) misrepresented the nature, characteristic or qualities of the Storm Catcher System in commercial advertising.

Second: That Defendants' conduct constituted a deceptive act or an unfair method of competition; and

Third: That Defendants' conduct damaged Armor Screen.

Fla. Stat. §501.204; Fla. Stat. §501.211; *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F.Supp. 2d 1314, 1326 (M.D. Fla. 2007);  *Urling v. Helms Exterminators, Inc*., 468 So. 2d 451 (Fla. 1st DCA 1985) ; *Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. 3d DCA 1984), review denied, 461 So. 2d 114 (Fla. 1984); *Day v. Le-Jo Enterprises, Inc*., 521 So. 2d 175 (Fla. 3d DCA 1988). *Montgomery v. The New Piper Aircraft, Inc*., 2002 U.S. Dist. LEXIS 18198 at *15-16 (S.D. Fla. 2002); *Day v. Le-Jo Enterprises, Inc*., 521 So.2d 175, 178 (Fla. 3d DCA 1988); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments,Inc.*, 262 F.Supp.2d 1334, 1357 (S.D. Fla. 1999); *Phillip Morris USA, Inc. v. Hines*, 2003 Fla. App. LEXIS 19771 (Fla. 4th DCA 2003); *Advanced Protection Technologies, Inc. v. Square D. Company*, 390 F.Supp. 2d 1155, 1163-64 (M.D. Fla. 2005); GMAC v. aesser, 718 So.2d 276, 277 (Fla. 4th DCA 1998);

GRANTED       _____

DENIED        _____

MODIFIED _____

## PROPOSED JURY INSTRUCTION NO. 81

## FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT
## (ACT)

In deciding whether Armor Screen may recover, the first question you must decide is whether the Defendants falsely represented that the Storm Catcher System was the Armor Screen System or misrepresented the nature, characteristic or qualities of the Storm Catcher System in commercial advertising.  If you find that neither of these occurred, then your verdict should be for the Defendants.

However, if you do find that the Defendants engaged in either of these acts, then you must next determine whether these actions constitute a deceptive act and/or an unfair method or competition.

Fla. Stat. §501.204; *Third Party Verification, Inc. v. Signaturelink, Inc.,* 492 F.Supp. 2d 1314, 1326 (M.D. Fla. 2007);  *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451 (Fla. 1st DCA 1985).

GRANTED      _____

DENIED       _____

MODIFIED _____

## PROPOSED JURY INSTRUCTION NO. 82

## FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT
### (DECEPTIVE OR UNFAIR)

An act is deceptive if it is likely to mislead consumers as to a material consideration that is likely to cause injury to a reasonable, relying consumer.   Therefore, even if an act is likely to mislead consumers it is not deemed "deceptive" unless it is likely to mislead as to a "material consideration." A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

If you find that the Defendants actions were neither unfair nor deceptive, then you must find for the Defendants.  If you do find that the Defendants actions were deceptive and/or unfair, you must next determine whether any actual damages occurred.

Fla. Stat. §501.204; *Advanced Protection Technologies, Inc. v. Square D. Company*, 390 F.Supp. 2d 1155, 1163-64 (M.D. Fla. 2005); *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F.Supp. 2d 1314, 1326 (M.D. Fla. 2007);  *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451 (Fla. 1st DCA 1985); *Montgomery v. The New Piper Aircraft, Inc.*, 2002 U.S. Dist. LEXIS 18198 at *15-16 (S.D. Fla. 2002); *Day v. Le-Jo Enterprises, Inc.*, 521 So.2d 175, 178 (Fla. 3d DCA 1988).

GRANTED    _____

DENIED        _____

MODIFIED _____

**PROPOSED JURY INSTRUCTION NO. 83**

**FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT
(DAMAGE)**

Next, you must determine whether Armor Screen was damaged as a result of the Defendants actions. Specifically, you must find that Armor Screen has proven that Defendants actions (a) actually deceived consumers; (b) that consumers relied on this deception in making purchases; and (c) that this damaged Armor Screen.  If you find that Armor Screen has failed to prove any of these elements, then you must find for the Defendants.   Thus, you should find for the Defendant if you find that Defendants' actions – even if deceptive or unfair – did not affect a consumer's purchasing decision, did not deceive consumers, or did not damage Armor Screen. On the other hand, if you find for Armor Screen, must next determine what damages – if any – to award the Armor Screen.

*Eclipse Medical, Inc. v. American Hydro-Surgical Instruments,Inc*., 262 F.Supp.2d 1334, 1357 (S.D. Fla. 1999); *Phillip Morris USA, Inc. v. Hines*, 2003 Fla. App. LEXIS 19771 (Fla. 4th DCA 2003); GMAC v. aesser, 718 So.2d 276, 277 (Fla. 4th DCA 1998);

GRANTED      _____

DENIED        _____

MODIFIED _____

## PROPOSED JURY INSTRUCTION NO. 84

## FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT
## (DAMAGES)

If you find for Defendant, you will not consider the matter of damages. However, if you find for the Plaintiff, you must determine the damages at issue. Even if you find for the Plaintiff, no damages can be awarded if Defendant has, in good faith and without knowledge that the information violated the law, merely passed on the claims that a manufacturer or wholesaler has made with regard to the product involved.

However, if you find that the Plaintiff is entitled to damages, you may award the Plaintiff with its actual damages. The measure of actual damages is the difference in the market value of the Plaintiffs product or service caused by the Defendants actions. If you find that the product or service was rendered valueless as a result of Defendants actions, then the purchase price is the appropriate measure of damages. Consequential damages, such as lost profits, may not be awarded.

Fla. Stat. § 501.211; *Urling v. Helms Exterminators, Inc*., 468 So. 2d 451 (Fla. 1st DCA 1985) ; Rollins, Inc. v. Heller, 454 So. 2d 580 (Fla. 3d DCA 1984), review denied, 461 So. 2d 114 (Fla. 1984); *Day v. Le-Jo Enterprises, Inc*., 521 So. 2d 175 (Fla. 3d DCA 1988); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments,Inc*., 262 F.Supp.2d 1334, 1357 (S.D. Fla. 1999); *Phillip Morris USA, Inc. v. Hines*, 2003 Fla. App. LEXIS 19771 (Fla. 4th DCA 2003); GMAC v. aesser, 718 So.2d 276, 277 (Fla. 4th DCA 1998);

GRANTED      _____

DENIED      _____

MODIFIED _____

## PROPOSED JURY INSTRUCTION NO. 85

## LANHAM ACT VIOLATION – FALSE ADVERTISING
### Elements

The Federal Lanham Act, which governs false or misleading advertising of goods sold in more than one state, prohibits anyone from "misrepresenting the nature, characteristics qualities or geographic origin" of its goods "in commercial advertising or promotion."  In order to bring such a claim, a corporation must believe that it is likely to be damaged by such act.   To establish a claim for false advertising under the Lanham Act, Armor Screen must prove by the greater weight of the evidence that:

(1) that the Defendants' advertisements were false or misleading;

(2) that the Defendants' advertisements deceived, or had the capacity to deceive, consumers;

(3) that the deception had a material effect on consumers' purchasing decisions;

(4) that the misrepresented product or service affected interstate commerce; and

(5) that Armor Screen has -- or is likely to be -- injured as a result of the false advertising.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).


GRANTED      _____

DENIED       _____

MODIFIED     _____

## PROPOSED JURY INSTRUCTION NO. 86

### LANHAM ACT VIOLATION – FALSE ADVERTISING
### False or Misleading

To find that Defendants engaged in false advertising, you must find that the Defendants utilized advertising that was "literally false" as a purely factual matter. If you find that the Defendants advertising was either true or find that you cannot determine whether or not the advertisements are false, then you must determine whether the advertising is "misleading." If you find that Defendants advertising was not false or misleading you must find for the Defendants.

If you find that the advertising is not false, but is misleading, you must determine whether Armor Screen has shown actual evidence that that the Defendants advertising actually resulted in consumer confusion. This evidence may have been presented in the form of consumer surveys, market research, expert testimony, or other evidence. If no such evidence has been presented and Armor Screen has not demonstrated that Defendants set out to deceive the public, then you should find for Defendants. If, however, you find that Defendants set out to deceive the public, you must determine whether or not consumers were or could have been confused. If your answer to this is no, then you should find for the Defendants.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc*., 299 F.3d 1242, 1247 (11th Cir. 2002);

GRANTED     _____

DENIED      _____

MODIFIED    _____

**PROPOSED JURY INSTRUCTION NO. 87**

**LANHAM ACT VIOLATION – FALSE ADVERTISING**
**Materiality**

If you find that Defendants' advertisements were false, or misleading and deceptive, you must next determine whether Armor Screen has established that the deception materially influenced a consumer's purchasing decision.   Therefore, if you find that Defendants advertisements were false or misleading and deceptive but had no effect on a consumer's purchasing decision, then you must find for the Defendants.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

GRANTED        _____

DENIED          _____

MODIFIED      _____

**PROPOSED JURY INSTRUCTION NO. 88**

**LANHAM ACT VIOLATION – FALSE ADVERTISING**
**Injury**

You must next determine whether Armor Screen was injured by Defendants' actions. If you find that the Armor Screen was not harmed by the Defendants' actions, then you must find for the Defendants.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

GRANTED      _____

DENIED       _____

MODIFIED     _____

**PROPOSED JURY INSTRUCTION NO. 89**

**LANHAM ACT VIOLATION – FALSE ADVERTISING**
**Damages**

If you find that Defendants engaged in false advertising you will need to determine the amount of monetary damages to be awarded to the Plaintiff. In that respect you should award Armor Screen an amount of money shown by a preponderance of the evidence to be fair and adequate compensation for the loss or damage that proximately resulted from Defendants action.

However, you find that the injury to Armor Screen is remote and that any damages awarded are based on speculation, then you should find that Armor Screen is not entitled to damages.

*Furniture "R" US, Inc. v. Leath Furniture, LLC*, 2008 U.S. Dist. LEXIS 74135 (S.D. Fla. 2008); *Phoenix of Broward, Inc. v. McDonald's Corp*., 441 F. Supp. 2d 1241, 1251 (N.D. Ga. 2006)

GRANTED   _____

DENIED   _____

MODIFIED   _____

## FINAL INSTRUCTIONS AT THE CLOSE OF EVIDENCE.

## PROPOSED JURY INSTRUCTION NO. 90

## DUTY TO DELIBERATE

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous.  In other words, to return a verdict you must all agree.  Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.  But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges - - judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

Eleventh Circuit Pattern Jury Instructions, § 7.1

GRANTED          _____

DENIED           _____

MODIFIED         _____

**PROPOSED JURY INSTRUCTION NO. 91**

**ELECTION OF FOREPERSON**

When you go to the jury room you should first select one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will speak for you here in court.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

Eleventh Circuit Pattern Jury Instructions, § 8

GRANTED      _____

DENIED       _____

MODIFIED     _____